422 So.2d 586 (1982)
Louise Duckless FONTENOT, Plaintiff-Appellee,
v.
Joseph Clarence THIERRY, Defendant-Appellant.
No. 82-238.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*587 J. Harold Fontenot, Opelousas, for defendant-appellant.
Brinkhaus, Dauzat & Falgoust, Jimmy L. Dauzat, Opelousas, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
DOMENGEAUX, Judge.
This is a suit for paternity and child support brought by the plaintiff, Louise Duckless Fontenot, against the defendant, Joseph Clarence Thierry. Plaintiff seeks to prove that the defendant is the biological father of her son, John F. Duckless, and therefore that he should be required to pay $200.00 per month for child support. The defendant conversely alleges that he is not the father of the boy, averring that plaintiff's ex-husband, St. Louis Dunbar, is the presumptive parent of the youth.
The trial court rendered judgment declaring Joseph Clarence Thierry to be the biological father of John F. Duckless and thereby ordered him to pay the plaintiff $200.00 per month in child support. The defendant suspensively appealed from this adverse judgment. We affirm.
The plaintiff asserted in her petition that from 1967 through December, 1970, she and the defendant engaged in sexual relations on numerous occasions, and that as a consequence thereof, she became pregnant and thereafter gave birth to a son, John F. Duckless, on September 4, 1971. Plaintiff averred that she had sex with no one other than the defendant during this period of time.
The defendant, on the other hand, specifically denied being the father of John F. Duckless, claiming that he never engaged in sex with the plaintiff after October, 1970, when he entered the Armed Forces. He did admit visiting plaintiff in December, 1970, at Plaisance High School, but stated that he did not recall having sex with her during said meeting.
Thierry also sought to deny paternity of the child by seeking to show that St. Louis Dunbar was the presumptive father of the boy. The plaintiff admitted the veracity of several facts submitted by the defendant in the form of a request for admissions, which included:
(1) That she married St. Louis Dunbar on February 11, 1971.
(2) That at the time of the birth of the child, she was married to Dunbar and had been married to him for approximately seven months prior to such birth.
(3) That Dunbar knew that she was pregnant at the time of the marriage.
(4) That Dunbar never filed a suit for disavowal of paternity of John F. Duckless, although no impediments prevented him from so doing.
(5) That the child had always lived with her and Dunbar until their divorce on November 12, 1974.
The defendant thereby concluded that St. Louis Dunbar was the presumptive father of John Duckless, by application of Louisiana Civil Code Article 184, which establishes that:
"... The husband of the mother is presumed to be the father of all children born or conceived during the marriage."
The issues presented in this appeal are:
(1) Whether or not the plaintiff had a right to institute a filiation proceeding on behalf of her child against the defendant; and
(2) Whether or not the plaintiff was entitled to receive child support payments from *588 the defendant upon showing that he was the biological father of her child.
Although with reluctance, we feel constrained to answer both of these questions in the affirmative.
In 1980, the Legislature passed Act 549, amending Article 209 of the Louisiana Civil Code to read as follows:
"Art. 209. Methods of proving filiation. 1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this Article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this Article.
2. A child who is shown to be the child of a woman on an original certificate of birth is presumed to be the child of that woman, though the contrary may be shown by a preponderance of the evidence.
3. An illegitimate child not shown as the child of a woman on an original certificate of birth may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the illegitimate child of that woman.
4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as living in a state of concubinage and resided as such at the time when the child was conceived creates a rebuttable presumption of filiation between the child and the alleged father.
5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent. A civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first. If an illegitimate child is born posthumously, a civil proceeding to establish filiation must be instituted within six months of its birth, unless there is a presumption of filiation as set forth in Section 2 above. If no proceeding is timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent shall be forever barred. The time limitation provided in this Article shall run against all persons, including minors and interdicts."
Article 209 was amended once again by Act 720 of 1981. This Act was approved by the Governor on July 23, 1981, and was published in the Official Journal of the State on August 11, 1981. By virtue of this amendment, Article 209 currently states:
"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
C. The right to bring this proceeding is heritable."
Professor Katherine Spaht of the Louisiana State University Law Center very ably contrasted the differences between Act 549 of 1980 and Act 720 of 1981 in 42 La.Law Review 403. In that Article, she commented:
"Furthermore, the language of article 208 is more precise than its predecessor in establishing which illegitimate children must institute the proceeding to establish filiation. Act 549 of 1980 [Article 209] specified that illegitimate children who had not been formally acknowledged regardless *589 of the circumstances of conception were required to institute a proceeding to establish filiation. Article 208, as amended by Act 720 of 1981, specifies that a child who enjoys legitimate filiation by application of the presumption of article 184, or a child who has been legitimated or formally acknowledged by the parent need not institute the proceeding. In all of the foregoing instances, sufficient proof of the parent-child link is available. Furthermore, article 209, as amended by Act 720, implies that the child who enjoys legitimate filiation, or is legitimated or formally acknowledged, cannot institute the proceeding to establish filiation. Such an interpretation is perfectly consistent with the organization of the Civil Code articles regarding proof of the parent-child relationship, but inconsistent with the implications of some of the jurisprudence. A further indication that such an interpretation is correct is the amendment to the Child Support Enforcement Program. The provisions which authorize the Department of Health and Human Resources to institute filiation proceedings suggest that article 209 prohibits a child from instituting the civil proceeding to establish filiation if he enjoys legitimate status: `The department... may ... take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section.' Reading the two statutory changes made in Act 720, the discernible legislative intent is that a child presumed to be that of the husband of the mother may not institute a proceeding to establish filiation to another man." (Footnotes omitted). (Brackets added).
We agree with the inferences of legislative intent developed by Professor Spaht in her article.[1] The Legislature seems to have finally taken a positive step toward eliminating the multiple paternity abuse that has existed in our jurisprudence for a number of years. The line of cases allowing dual paternity to be proven in situations in which the child seeking to demonstrate filiation is already the presumed legitimate child of another man should now be seriously reconsidered in light of this new legislation.
However, in the case at hand, the plaintiff filed suit on April 10, 1981, nearly four months prior to the enactment of the 1981 amendment to Article 209. Because of this, we feel compelled to adhere to the dictates of Louisiana Civil Code Article 8, which provides:
"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
This Court commented on the application of Article 8 in Ewing v. State Farm Mutual Automobile Insurance Company, 402 So.2d 779 (La.App. 3rd Cir.1981), stating:
"... This general rule of prospective application applies only to substantive laws. Procedural or remedial laws will be given retroactive effect unless a contrary intention is shown by the Legislature or such retroactivity would operate to divest vested rights."
Due to the substantive nature of Article 209 as amended in 1981, we feel bound to give it prospective rather than retrospective application. This compels us to apply Article 209 as amended by Act 549 of 1980 to the case at hand. Therefore, we must hold that in this particular situation, the plaintiff had a right to bring the action to prove filiation.
Appellate courts will not overturn the factual findings of trial courts unless the record establishes that such determinations *590 are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Kirklin v. Winn-Dixie Louisiana, Inc., 391 So.2d 87 (La.App. 4th Cir.1980). Based upon the "preponderance of the evidence" standard described in paragraph 4 of Article 209 of the Civil Code as amended in 1980, we are unable to conclude that the trial judge in this case was clearly wrong in his evaluations of the evidence presented.[2]
Several facts seem to have led to the trial judge's conclusion that Thierry was the biological father of Duckless. The defendant admitted under oath that he often allowed the child to spend time with him at his home, sometimes for periods of four to five days, that he often took the child on fishing trips, and that he frequently bought the child gifts, including clothes, candies, a BB gun, and a bicycle. He also admitted allowing the child to call him daddy, even in the presence of others. Furthermore, when asked under oath whether or not he had engaged in sex with the plaintiff during his visit with her in December, 1970, the defendant could only respond that he did not "recall" having sex with her at this time. The trial judge apparently felt that the plaintiff proved the defendant's paternity by a preponderance of the evidence, and we are reluctantly unwilling to challenge his conclusions as being manifestly erroneous.
The plaintiff cites the cases of State in Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.1979), writ denied 370 So.2d 577 (La.1979), and Warren v. Richard, 296 So.2d 813 (La.1974) as authority for the proposition that a child may recover child support from its biological father even though it is the presumed legitimate offspring of another man. Plaintiff argues that based on these cases she is entitled to recover from the defendant regardless of whether or not St. Louis Dunbar is presumed to be the father of her son.
It is with serious reservation that we feel compelled to follow the jurisprudence cited by the plaintiff. Professor Spaht and William Marshall Shaw, Jr., in their article "The Strongest Presumption Challenged: Speculations on Warren v. Richard and Succession of Mitchell", 37 La.Law Review 59 (1976), questioned the Louisiana Supreme Court's holding in Warren, stating:

"Warren raises problems in application. It destroys the conclusiveness of Article 184 in all cases arising under Levy [v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436] and progeny, yet provides no substitute standards by which paternity may be proven. It is not even clear that it is restricted to those cases in which it can be shown that the husband could not possibly be the father. If anyone who believes that he has a biological relationship to a decedent has a constitutional right to make out the true facts of paternity, by any evidence and regardless of a contrary presumption, then every wrongful death action bears the seeds of a suit to fix paternity. Moreover, the father-child relationship so fixed will apparently bear the consequences normally associated therewith only for those limited purposes defined by the United States Supreme Court. The result is part-time paternity." (Footnotes omitted).
Unfortunately, Warren seems to have opened the door to an array of paternity suits allowing the mothers of otherwise legitimate children to bring filiation proceedings against alleged biological fathers at their own whim and fancy. But it seems that the Legislature has finally seen fit to change such a situation as this by amending Louisiana Civil Code Article 209 to its present form. Perhaps the Supreme Court should re-evaluate Warren in light of this *591 new legislation, in order to determine its continuing viability. But until this occurs, we must adhere to its decision in Warren. Therefore, we regretfully conclude that the plaintiff is entitled to receive child support payments from the defendant in the case at bar.
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs at trial and on appeal are assessed against the defendant, Joseph Clarence Thierry.
AFFIRMED.
NOTES
[1] Another of our Courts of Appeal, in a decision rendered on August 17, 1982, entitled IMC Exploration Company and The Petroleum Corporation of Delaware v. Foster Henderson, et al., 419 So.2d 490 (La.App. 2nd Cir.1982) seems to indicate that it might agree with the inference of legislative intent drawn by Professor Spaht and this Court in future cases decided under Act 720 of 1981.
[2] The "preponderance of the evidence" standard described in Article 209 should be distinguished from that delineated in Article 187 of the Civil Code. In Ogea v. Ogea, 378 So.2d 984 (La.App. 3rd Cir.1979), writ denied 379 So.2d 1104 (La.1980), this author interpreted the meaning of the phrase "preponderance of the evidence" as written in Article 187, stating:

"This indicates to us that the intent of the Legislature is such that a mere preponderance of the evidence by the husband would not be sufficient to disavow a child, but that his preponderance must be in connection with the type of facts illustrated in the Official Revision Comments or type of facts of the same general nature or calibre."