452 So.2d 344 (1984)
David GRIFFIN, et al.
v.
SUCCESSION OF Velma King BRANCH, Through Johnny SMITH, Executor.
No. 83 CA 0446.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Writ Granted October 12, 1984.
*345 James R. Coxe, III, Baton Rouge, for plaintiffs-appellants David Griffin, Thelma Griffin Battley, John Griffin, Daisy Griffin.
J.D. Deblieux, Baton Rouge, for defendant-appellee.
En Banc.
CARTER, Judge:
This is a suit in which the plaintiffs contend that they are illegitimate children of David Branch and as such they seek to establish filiation. David Griffin, Thelma Griffin Battley, John Griffin, and Daisy Griffin filed suit against the Succession of Velma King Branch, alleging that they are illegitimate children and heirs of David Branch, deceased husband of Velma King Branch.
Plaintiffs' mother, Pearllena White Griffin, was married on June 10, 1940, to Albert Griffin. The two were allegedly physically separated on July 15, 1955. On March 6, 1956, Thelma White (Thelma Griffin Battley) was born to Pearllena White Griffin.[1] David and Daisy Griffin were born on August 26, 1957, with the birth certificates listing Albert Griffin and Pearllena Griffin as the father and mother. On February 26, 1962, John Felix Griffin was born, with the birth certificate listing Albert Griffin and Pearllena Griffin as the father and mother. On December 27, 1972, the marriage of Albert Griffin and Pearllena Griffin was dissolved by a divorce from a California court.
David Branch and Velma King Branch were married approximately fifty years ago. No children were born of this marriage. On December 7, 1980, David Branch died intestate in East Baton Rouge Parish and was survived by his spouse Velma King Branch. Succession pleadings were filed placing Velma Branch in possession of the estate of David Branch. The estate, which was comprised of two pieces of property, furniture, and an automobile, consisted of community property acquired by the Branches.
Subsequently, on January 29, 1982, Velma King Branch died testate. Johnny Smith was named executor in the succession pleading.
On March 1, 1982, David Griffin, Thelma Griffin Battley, John Griffin, and Daisy Griffin filed suit in the succession proceeding to establish filiation to David Branch and to be recognized as his illegitimate heirs.
The trial judge rendered judgment in favor of defendant, finding that plaintiffs had failed to carry the burden of proving their filiation to David Branch. From this adverse judgment, plaintiffs appeal.
Although plaintiffs have assigned four errors committed by the trial court during trial on the merits, we do not find it necessary to address them because we seriously question plaintiffs right to bring an action to establish filiation to David Branch.
Plaintiffs were all born or conceived during the marriage of their mother to Albert Griffin. They are, therefore, entitled to legitimate filiation by application of the presumption of LSA-C.C. art. 184.[2]
The trend of the jurisprudence has been to allow the true parentage of an individual to be established, if such can be accomplished. Succession of Mitchell, 323 So.2d 451 (La.1975); Warren v. Richard, 296 So.2d 813 (La.1974); IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2nd Cir.1982), writs denied, 423 So.2d 1149, 1150 (La.1982).
*346 Warren v. Richard, supra, held that, for purposes of a wrongful death action under LSA-C.C. art. 2315, a child may be the presumed legitimate child of the husband of the mother under LSA-C.C. art. 184 and the biological child of another man. Succession of Mitchell, supra, held that children presumed to be legitimate children of the husband of the mother (under LSA-C.C. art. 184) could be legitimated under LSA-C.C. art. 198 by the subsequent marriage of the mother to their biological father.
In IMC Exploration Co. v. Henderson, supra, a concursus proceeding was filed to determine royalty ownership of proceeds from wells located on property whose ownership was in question. One group of claimants was Rayvenita Thomas and her mineral assignees who contended that Rayvenita was the illegitimate daughter of Moody Henderson, a son of Martha and Charlie Henderson (record owners of the property) who predeceased his parents, and that as such, Rayvenita was entitled to inherit from the Hendersons by representation. There was no dispute that Rayvenita's mother was married to a man other than Moody Henderson at the time of Rayvenita's conception and birth. Rayvenita's legal father never filed an action to disavow paternity. The presumption of paternity under LSA-C.C. art. 184 was clearly applicable. The Second Circuit recognized that prior to Warren and Mitchell Rayvenita would not have been able to prove that she was the biological child of Moody Henderson and that she was not the legitimate child of her mother's husband. The court also recognized that in Warren and Mitchell there was no dispute as to the identity of the biological father, whereas Rayvenita's parentage was vigorously contested. The Court of Appeal allowed Rayvenita to assert her claims, but reversed the trial court's factual findings that she had proven by a preponderance of the evidence that Moody Henderson was her biological father.
At the time of the Henderson case, LSA-C.C. art. 208 read as follows:
"Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their paternal descent."
LSA-C.C. art. 208, as amended by Act 720 of 1981,[3] specifies that a child who enjoys legitimate filiation by application of the presumption of LSA-C.C. art. 184,[4] or a child who has been legitimated,[5] or formally acknowledged[6] by the parent need not institute a proceeding to establish filiation under LSA-C.C. art. 209.
LSA-C.C. art. 209, as amended by Act 720 of 1981,[7] implies that a child who enjoys legitimate filiation, or is legitimated or *347 formally acknowledged, cannot institute a proceeding to establish filiation.[8]
Although this court has recently held in Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983) that a child entitled to legitimate filiation by application of the presumption of LSA-C.C. art. 184 is not prohibited from establishing filiation to his biological father, we are now convinced that the Levy decision should be seriously reconsidered in light of the changes made in Act 720 of 1981. In Levy we interpreted the language in LSA-C.C. art. 209 ("a child not entitled to legitimate filiation") to mean "a child who is not entitled to legitimate filiation to the parent to whom he is attempting to prove filiation."
In carefully reading the statutory changes made in Act 720, we feel compelled to overrule our previous holding in Succession of Levy and find that the legislative intent is that a child entitled to legitimate filiation may not institute a proceeding to establish filiation to another man. In light of the prior jurisprudence, we interpreted LSA-C.C. art. 209, as amended by Act 720 of 1981, too broadly in our decision in Levy. We now believe that our expansive reading of the statute is contrary to what the legislature intended.
By enacting Act 720, the legislature has taken a positive step toward preventing a legitimate child from shopping for a more prosperous biological father. In order to protect children from the stigma of illegitimacy, Louisiana courts have frequently established a father-child bond between two persons who could not possibly have a biological connection. To now permit and encourage legitimate children to bastardize themselves for a larger share of the succession pie would contradict public policy and the "good order" envisioned in the Civil Code.
In dicta, our brethren of the Second and Third Circuits indicated that they agree with this inference of legislative intent. IMC Exploration Co. v. Henderson, supra; Fontenot v. Thierry, 422 So.2d 586 (La.App. 3rd Cir.1982), writ denied 427 So.2d 868 (La.1983).
In comparing the language of LSA-C.C. arts. 208 and 209 as these articles read in Act 549 of 1980 and in Act 720 of 1981, the Second Circuit in IMC Exploration Co. v. Henderson, supra, noted that "under the new Article 208, since Rayvenita Thomas enjoys legitimate filiation, she might well, under the intent of the present law, be precluded from asserting her claim as an illegitimate." The Third Circuit in Fontenot v. Thierry, supra, stated:
"The Legislature seems to have finally taken a positive step toward eliminating the multiple paternity abuse that has existed in our jurisprudence for a number of years. The line of cases allowing dual paternity to be proven in situations in which the child seeking to demonstrate filiation is already the presumed legitimate child of another man should now be seriously reconsidered in light of this new legislation."
The court in Fontenot went on to state that Warren and its progeny seem to have "opened the door to an array of paternity suits allowing mothers of otherwise legitimate children to bring filiation proceedings against alleged biological fathers at their own whim and fancy."
Therefore, we hold that under LSA-C.C. arts. 208 and 209, as amended by Act 720 of 1981, a legitimate child cannot institute a proceeding to establish filiation to another man.
In the instant case, plaintiffs are entitled to legitimate status by application of the presumption of LSA-C.C. art. 184. This presumption, however, is rebuttable.[9] In *348 order to bring a suit to establish filiation under LSA-C.C. arts. 208 and 209, plaintiffs must successfully rebut the presumption of legitimacy.
In their petition, plaintiffs alleged that "they were conceived while their father and mother resided in the home of their father." The evidence demonstrated that although Pearllena Griffin lived in a house which belonged to David Branch, the house was a rent house. Further, the evidence plaintiffs presented at trial, consisting solely of their own self-serving testimony and that of their mother, did not substantiate the allegations contained in plaintiffs' petition. The defendants' witnesses, including neighbors of the Branches and people in the community, also rebutted plaintiffs' allegations. Additionally, plaintiffs' legal father (Albert Griffin) never disavowed plaintiffs.
Because plaintiffs are entitled to a presumption of legitimate filiation, which has not been rebutted, under LSA-C.C. arts. 208 and 209, they are precluded from instituting an action to establish filiation to another man.
For the above reasons, the judgment of the trial court dismissing plaintiffs' suit is affirmed.
AFFIRMED.
SHORTESS, J., dissents from that portion of the opinion which overrules Succession of Levy but I concur in the result because the trial judge was not clearly wrong in holding that plaintiff failed to prove this filiation to David Branch.
PONDER, J., dissents for written reasons.
LOTTINGER and EDWARDS, JJ., dissent for reasons assigned by PONDER, J.
PONDER, Judge, dissenting.
First of all I believe that the majority has seized upon an inappropriate case to overrule Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983). Plaintiffs and appellants are seeking to establish filiation to David Griffin, not in his succession, but in that of his wife.
But waiving this uncertainty, I believe the majority to be wrong in its overruling of Levy. As I understand the rationale, the failure to follow Succession of Mitchell, 323 So.2d 451 (La.1975), Warren v. Richard, 296 So.2d 813 (La.1974) and IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir.1982), writs denied 423 So.2d 1149, 1150 (La.1982), is based upon what is believed to be the legislative intent in recent amendments to C.C. arts. 208 and 209. The majority finds only an implication in Art. 209 that a child who enjoys legitimate filiation or is legitimated or formally acknowledged cannot institute a proceeding to establish filiation. The curtailment of remedies long denied and then allowed should not be denied again on an implication. The effect of the majority opinion is to make the presumption of C.C. Art. 184 virtually an irrebuttable one.
The interpretation given to Art. 209[1] by Succession of Levy, 428 So.2d 904 (La.App. *349 1st Cir.1983) was consistent with Art. 208[2] and with the humanitarian ideals given expression by the change in the jurisprudence governing the rights of illegitimates.
The unexpressed fear that a plethora of suits attacking titles will result from allowing Levy to continue to be effective is rendered invalid by the time limitations of Art. 209.
I cannot agree with the majority's conclusion that the presumption of legitimate filiation to the husband of the mother has not been rebutted in view of the undisputed evidence of the absence of the husband in California from early 1955 for a period of ten years and of the testimony recounted below.
To prevail in their suit, plaintiffs have to prove, by a preponderance of the evidence, that David Branch was their actual father.[3] I believe the trial court was clearly wrong in ruling that the plaintiffs failed to meet their burden of proof.
All the plaintiffs testified that during the lifetime of David Branch they had been informally acknowledged by him in a number of ways, including gifts of money, food, toys and clothes. In addition, he affirmed to others that the plaintiffs were his children. On several occasions when the plaintiffs were young children, they stayed weekends in the Branch home. They continued to visit in the Branch home and attend family gatherings on holidays and other occasions until Mr. Branch's death. When the three older children were about nine or ten, Mrs. Branch called them all over to her house on a party occasion "to accept them" into her life.
The plaintiffs' mother testified that when her husband, Albert Griffin, moved to California, she remained living in a house Mr. Branch owned. She had a continuous sexual relationship with him and paid him no rent. After the birth of the first three children, she moved a few blocks away but continued the sexual relationship at least until their fourth child was born.
Mrs. Griffin testified that although she and Mrs. Branch never discussed the children's parentage directly, Mrs. Branch knew that her husband David was their father. Although she never visited in the Branch home, her children did so quite often, at the request of Mrs. Branch as well as their father.
At Mr. Branch's funeral, an obituary handout was prepared by a funeral home employee, passed out at the funeral, and read aloud to the congregation at the funeral. An obituary was published in the newspaper. Both stated that Mr. Branch was survived by his four children, the plaintiffs. The testimony of witnesses for the defense on this matter followed two courses: (1) they either did not notice the obituary and did not see the handout nor hear it being read, or (2) they noticed but did not think anything of it and said nothing about it to Mrs. Branch or anyone else. This testimony is plainly unbelievable and obviously concocted.
Mr. Johnny Smith, the executor of Mrs. Branch's succession, testified that he had *350 no knowledge of who provided the information for the handout and obituary. According to him, neither Mrs. Branch nor any of her relatives made any comment about or objection to either.
We believe the trial court erred in refusing to consider as evidence the events which took place after the death of Mr. Branch.[4] At time of trial, C.C. art. 209 had been amended and the evidentiary restriction in 209(5) had been removed.
In addition to the above, David Griffin testified that both at the funeral and the wake, he and his siblings sat next to Mrs. Branch. No one made any objections to their sitting with the other relatives of Mr. Branch. His two sisters rode in the limousine with Mrs. Branch at the end of the funeral, while he and his brother rode in another limousine. One defense witness admitted seeing the plaintiffs sitting in the "family seat" at the funeral, but all the other defense witnesses claimed not to have noticed who sat with Mrs. Branch and who left in the limousines afterward.
Mr. Edward Gaines, the funeral organist, testified that he prepared the handout and obituary, at Mrs. Branch's request. She reviewed the information he put in both and approved the inclusion of the plaintiffs as her late husband's children. He included in the handout a poem written by David Griffin about his father.
At Mr. Branch's final illness, it was undisputed that Mrs. Branch called David Griffin and asked him to take her husband to the hospital, assisted by Mr. Branch's nephew. David subsequently spent quite a bit of time with Mr. Branch at the hospital, even taking a leave of absence from work at one point. The physician who admitted and attended Mr. Branch and an attending RN both testified that they assumed David Griffin was Mr. Branch's son, as he brought Mr. Branch to the emergency room, signed consent forms for treatment and tests, and spent a substantial amount of time with Mr. Branch at the hospital.
I believe also that the trial court erred in refusing to admit and consider as evidence the hospital records, which included the consent forms as well as references to David Griffin in the nurses' notes. LSA-R.S. 13:3714[5] provides that a certified copy of hospital charts or records shall be received into evidence as prima facie proof of its contents.
I think that the trial court erred in refusing to admit into evidence the AFDC records of Pearllina Griffin, put in on proffer by the plaintiffs. The records contain a crucial report by a caseworker of her interview with Mr. Branch on September 20, 1957, in which Mr. Branch made the admission that he had been "going with" Pearllina Griffin since the spring of 1955, and that he was the father of her three children, Thelma, David and Daisy (John had not yet been born). At the time of trial, the interviewing caseworker could not be found, but the custodian of records for the office of Family Security, Department of Health and Human Resources for the Parish of East Baton Rouge, testified that the case records, including the interview report, were official records of the State of Louisiana. I see no impediment to admission of a certified copy of the records under the "public documents" exception to the rule against hearsay. See State v. Nicholas, 359 So.2d 965 (La.1978); alternatively, they can be admissible under the "business records" exception. See Ziemba v. City of *351 New Orleans, 411 So.2d 697 (La.App. 4th Cir.1982). The records are admissible for a relevant and proper purpose, and I see no indicia of unreliability in the report containing Mr. Branch's admission against interest, admitting paternity.
NOTES
[1] No father is named on the birth certificate of Thelma White.
[2] LSA-C.C. art. 184 provides:

"The husband of the mother is presumed to be the father of all children born or conceived during the marriage."
[3] LSA-C.C. art. 208 provides:

"In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209."
[4] See Footnote 2 supra.
[5] LSA-C.C. arts. 198 and 200.
[6] LSA-C.C. art. 203.
[7] LSA-C.C. art. 209 provides:

"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
C. The proceeding required by this article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
D. The right to bring this proceeding is heritable."
[8] For similar view, see Developments in the Law, 1980-1981Persons, 42 La.L.Rev. 403 (1982).
[9] Art. 185. Presumption of paternity, date of birth

"A child born less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage. A child born three hundred days or more after the dissolution of the marriage is not presumed to be the child of the husband.
Art. 186. Presumption of paternity, negation
"The husband of the mother is not presumed to be the father of the child if another man is presumed to be the father."
Art. 187. Action in disavowal, burden of proof
"The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father."
Art. 188. Husband's loss of right to disavowal
"A man who marries a pregnant woman and who knows that she is pregnant at the time of the marriage cannot disavow the paternity of such child born of such pregnancy. If another man is presumed to be the father, however, then the provisions of Article 186 apply. The husband also cannot disavow paternity of a child born as the result of artificial insemination of the mother to which he consented."
[1] LSA-C.C. art. 209 provides:

"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
"B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
"C. The proceeding required by this article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
"D. The right to bring this proceeding is heritable."
[2] LSA-C.C. art. 208 provides:

"In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209."
[3] C.C. art. 209(B) (added to by Act 720 of 1981), increasing the plaintiffs' burden of proof in a filiation proceeding as to an alleged deceased parent by requiring "clear and convincing evidence", was not effective until Sept. 11, 1982 and thus is not applicable to the instant suit.
[4] In effect only from July 23, 1980 to Sept. 11, 1981, C.C. art. 209(5) provided, in pertinent part, that:

"5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent..."
[5] LSA-R.S. 13:3714 provides:

Whenever a certified copy of the chart or record of any hospital in this state, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.