469 So.2d 287 (1985)
John FINNERTY, Plaintiff-Appellant,
v.
Janet Turner BOYETT, Defendant-Appellee.
No. 16781-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
*288 Waddell, Irvin & Thomas by Robert P. Waddell, Shreveport, for plaintiff-appellant.
W. Eugene Golden, Shreveport, for defendant-appellee.
Before HALL, FRED W. JONES, Jr., SEXTON, NORRIS and LINDSAY, JJ.[*]
*289 HALL, Judge.
The central issue presented is whether a person, who alleges he is the biological father of a child born during the marriage of the child's mother to another man, has a right of action to establish his paternity for the purpose of seeking visitation when his child is presumed under LSA-C.C. Art. 184 to be the child of the mother's husband. In the present case, the trial court answered this question in the negative; we reverse.
On April 16, 1980, Janet Turner married John Boyett. John Boyett was aware at the time of the marriage that Janet was pregnant with another man's child. When the child, Casey Nicole, was born in October 1980, Boyett was listed as the father on the birth certificate.
In May 1983, John Finnerty filed a petition naming Janet Boyett as defendant. The petition requested that Finnerty be recognized as the natural father of the child, and that he be granted specific visitation privileges. In his petition Finnerty alleged that he was the child's father, that he had "acknowledged" the child since her conception, that the mother openly admitted that he was the father, that he had paid child support to the mother both before and after the child's birth, and that, until recently, he had been allowed regular visitation privileges.
Janet Boyett then filed an exception of no right of action. In her exception Mrs. Boyett stated that the child was born one hundred and eighty days after Mrs. Boyett's marriage, that Mr. Boyett was listed as the father on the birth certificate, and that Mrs. Boyett had constantly and consistently maintained Mr. Boyett was the father. By agreement of counsel, Mrs. Boyett's exception was referred to the merits of the case.
Mrs. Boyett subsequently filed an answer to Mr. Finnerty's petition in October 1983 in which she admitted that her child, Casey Nicole Boyett, was conceived as the result of Mrs. Boyett's sexual relationship with Mr. Finnerty. She also admitted this fact at trial. However, Mrs. Boyett's answer denied receiving child support from Mr. Finnerty, openly acknowledging Mr. Finnerty as the father, or allowing Mr. Finnerty visitation privileges.
After trial on this matter, the trial court gave written reasons for a decision sustaining the exception of no right of action. The trial court found the evidence adduced established that while the child was born during the marriage of the defendant and her husband, there was no dispute that Finnerty was the biological father, and that Boyett knew of his wife's pregnancy at the time of the marriage. We further note that Mr. Boyett admitted at trial that people in the community knew that he was not the biological father of the child, but that he had "adopted" her as if she were his own, and that he treated her as such. The trial court went on to hold that neither state nor federal law gave Mr. Finnerty a right of action to establish his paternity. First, the trial court considered state law and reasoned that no right of action existed because the legislature had not enacted specific authority for such an action, and because the legislature had indicated disapproval of the concept of dual paternity. Reasons to support the latter point were drawn from Fontenot v. Thierry, 422 So.2d 586 (La.App. 3d Cir.1982), writ denied, 427 So.2d 868 (La.1983), which is discussed later in the present opinion. This reasoning was said to be consistent with the traditional Louisiana family law policy of promoting and protecting the family unit. Second, the trial court considered federal law and reasoned that the thrust of the United States Supreme Court jurisprudence was to give the Boyett family a constitutional due process right to privacy which protected them from intrusion by Mr. Finnerty. The case of Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), a case which dealt with the due process rights of foster families, was cited for the statement that there exists a "private realm of family life which the state cannot enter."
Additionally, but not the basis of the trial court's holding, there was the court's opinion *290 that allowing visitation would not be in the child's best interest. The court felt that the plaintiff had the burden of showing that the child's best interest would probably be served by allowing visitation, but that plaintiff had not met this burden. In the court's opinion, the child's best interest were served by a stable home environment not subject to periodic or arbitrary intrusions.
Mr. Finnerty appealed the trial court's judgment sustaining the exception of no right of action and dismissing plaintiff's suit. With reference to the constitutional issue of due process, he contends the liberty interest of the Boyetts must be balanced against his liberty interest that derives from blood relationship and basic human right. Appellant, like the trial court, cites Smith to support his contention. Both the appellant and the trial court also cite Taylor v. Taylor, 295 So.2d 494 (La.App. 3d Cir.1974), writ denied, 299 So.2d 799 (La. 1974), as holding that while a biological father has no right to establish paternity when another man is presumed to be the father, the biological father, nevertheless, has a right to visitation when such visitation is in the best interest of the child. The trial court noted, however, that Taylor did not address the constitutional issue of family privacy.
Mrs. Boyett contends that appellant should not be allowed to assert that he is the biological father since to recognize him as such would bastardize a legitimate child. Mrs. Boyett further contends that appellant should not be so recognized since children who already enjoy legitimate filiation are precluded from attempting to filiate to another man. With regard to the latter contention, appellee directs the court's attention to the recent decision of Griffin, et al. v. Succession of Branch, 452 So.2d 344 (La.App. 1st Cir.1984), writs granted, 458 So.2d 108 (La.1984). As to visitation, appellee acknowledges Taylor as controlling, but contends that allowing appellant visitation rights would not be in the best interest of the child in this particular case.

THE NATURAL FATHER'S DUE PROCESS RIGHTS
The most recent pronouncement of the United States Supreme Court with regard to the due process rights of natural fathers is Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). As stated in Lehr, the Court, prior to that case, had examined the extent to which a natural father's biological relationship with his illegitimate child receives protection under the Due Process Clause in precisely three cases: Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979). Thus, resolution of the due process issue in the instant case must be made in light of these four United States Supreme Court decisions.
In the Stanley case, the Court struck down a state statute that established an irrebuttable presumption that fathers of illegitimate children were unfit to have custody of those children. Under the statute, such children were automatically made wards of the state upon the death of the mother; the actual relationship between the father and his children was totally irrelevant. Thus, the statute gave Mr. Stanley, who had lived with and cared for his children all their lives, no opportunity to show his fitness as a parent. The court held that parents in Mr. Stanley's position were constitutionally entitled to a hearing on their fitness before custody of the children could be taken away by the state.
While Stanley differs from the present case in that Mr. Finnerty, unlike Mr. Stanley, has never had custody of his child, one important similarity is the issue of an irrebuttable presumption. Under LSA-C.C. Art. 184, the husband of the mother is presumed to be the father of all children born or conceived during the marriage. But for this presumption, Mr. Finnerty would be able to filiate his child either by acknowledging her as provided in LSA-C.C. Art. 203, or by legitimating her as provided in LSA-C.C. Art. 200. Therefore, *291 holding that Mr. Finnerty has no right of action to establish his paternity is to interpret the presumption of Art. 184 as irrebuttable as applied to Mr. Finnerty. This interpretation elevates the presumption from one in the nature of an evidentiary rule, to one in the nature of a substantive rule of law. In light of Stanley, grave doubt is cast upon the constitutionality of such an interpretation of the presumption. Just as the irrebuttable presumption in Stanley denied the father in that case any opportunity to establish his fitness as a parent, interpreting the presumption of Art. 184 as irrebuttable would deny the father in this case any opportunity to establish his paternity, and, as discussed later in this opinion, would effectively deny him any opportunity of ever establishing a personal relationship with his child. Furthermore, as noted in Stanley, while procedure by presumption is always cheaper and easier than individualized determinations, "the Constitution recognizes higher values than speed and efficiency."
In the Quilloin case, the court upheld a state statute that allowed illegitimate children to be adopted without consent of the natural father. The significant factor in the case, which serves to distinguish it from Stanley, is that the father in Quilloin had the opportunity to legitimate his child prior to the filing of the adoption proceedings, and thus to object to the adoption of his child. Because he failed to take advantage of that opportunity, the adoption issue was resolved by a determination of the best interest of the childa determination in which the father was allowed to participate. The Court unanimously held that the trial court's action to grant the adoption was consistent with due process.
In the Caban case, a stepfather wished to adopt his wife's children who had been born prior to the marriage and out of wedlock. Under state law, an unwed mother could block the adoption of her children, but an unwed father could not. The natural father, who wished to block the adoption, challenged the constitutionality of the law on both due process and equal protection grounds. Because the Court found the law's sex-based distinction violated equal protection, the Court did not consider the father's due process claim. Nevertheless, as noted in Lehr, the comments of the dissenting justices in Caban are instructive because of the distinction drawn between a biological relationship as opposed to an actual relationship of parental responsibility. This distinction, implicated in Stanley, Caban, and Quilloin, was more fully explained in Lehr.
The court in Lehr found that, on the one hand, the significance of an actual relationship is that such a relationship demonstrates a commitment to the responsibilities of parenthood, and thus gives the natural father who enjoys such a relationship substantial protection under the Due Process Clause. On the other hand, the significance of the blood relationship is much more limited:
The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a state to listen to his opinion of where the child's best interest lie.
In accordance with the reasoning above, the Court held that the natural father in Lehr, who never had a significant personal relationship with his child, was not entitled to notice of a pending adoption proceeding involving his child where state law had afforded him the opportunity to receive such notice by simply mailing a postcard to the putative father registry, but where he had failed to take advantage of this opportunity.
The Court went on to note that the most effective protection of a natural father's opportunity to initially develop a relationship with his child is through marriage. *292 Nevertheless, the Court recognized that the availability of that protection is obviously dependent on the will of both parents and that state law in that case had thus provided, via a special statutory scheme, an alternate means of protecting the natural father's interest in assuming a responsible role in the future of his child.
The preceding review of the United States Supreme Court jurisprudence reveals that in determining the amount of protection which will be afforded a natural father under the Due Process Clause, the significance of his actual relationship with his child is far greater than that of his biological relationship. Nevertheless, the biological relationship does entitle a natural father to at least some opportunity to develop a personal relationship with his child, and thus to assume a responsible role in the future of his child. Furthermore, the requirement of an opportunity is not adequately fulfilled by the option of marriage, since the mother could unilaterally remove that opportunity by refusing to marry the natural father.
Applying these principles to natural fathers who wish to challenge the presumption of Art. 184 leads to the conclusion that interpreting Art. 184's presumption as irrebuttable would deprive such fathers of the opportunity to develop a relationship with their children, and thus would deprive them of the limited due process rights afforded them by the Fourteenth Amendment's Due Process Clause. Therefore, the father in this case must be allowed the opportunity to rebut the presumption, and the trial court's finding of no right of action must be reversed.
Finally, we note that Smith, supra, cited in both the trial court's opinion and in appellant's brief, is much less on point than the four cases just discussed. While that case, involving a conflict between a foster family and a natural family, does recognize a liberty interest in family privacy, it also recognizes a liberty interest deriving from blood relationship. Similarly, Lehr recognized constitutional protection of "a recognized family unit" and the state interest in protecting "formal family relationships," but also recognized constitutional protection of blood relation interest. Clearly, neither Smith nor Lehr is authority for recognizing the Boyetts' liberty interests to the exclusion of Mr. Finnerty's liberty interests. Rather, both of these competing liberty interests are entitled to recognition, since both may coexist compatibly as in the more commonly encountered situation of visitation by noncustodial parents following divorce and remarriage.

THE NATURAL FATHER'S RIGHTS UNDER STATE LAW
While the central issue in this case has been determined by constitutional considerations, even without such considerations it is far from clear that Mr. Finnerty would be precluded under state law from having a right of action to filiate with his child for the purpose of securing visitation rights. As noted above, the primary arguments against recognizing such an action are:
(1) Such an action would serve to bastardize children who enjoy legitimate filiation; and
(2) Such an action would give natural fathers like Mr. Finnerty an action that their children do not have, since children who enjoy legitimate filiation cannot bring an action to filiate with a natural parent.
Before discussing each of these arguments, we note that discussion may not be dispensed with by declaring that Mr. Finnerty has no right of action to establish his paternity, but that Mr. Finnerty nevertheless has a right to visitation. If a natural father has no right of action by which he can have the biological parent-child link legally recognized, then there is no link, in the eyes of the law, that could serve as a basis for granting visitation. This court does not find that the Third Circuit Court of Appeal's opinion in Taylor v. Taylor, supra, holds otherwise. Furthermore, we are in agreement with the holding in the Third Circuit's more recent opinion in Durr v. Blue, 454 So.2d 315 (La.App. 3d Cir. *293 1984). In that case the court held that biological fathers have a right to prove their biological relationship to their children for certain purposes despite the presumption of Art. 184.
In discussing the first argument listed above, several points should be recognized. Initially, we note that an avowal action is not an attempt by the natural father to exercise the presumed father's right to disavow paternity. The two actions are distinct and separate. The disavowal action breaks the tie upon which legitimate filiation is based, and thus serves to bastardize a child; the avowal action establishes the existence of a tie not previously recognized, and thus serves to establish true filiation. Since the avowal action on the part of the natural father does not act as a disavowal action on the part of the presumed father, the avowal action does not bastardize a child through that mechanism. The issue is whether an avowal of paternity, by establishing true filiation, necessarily bastardizes a child.
The process of filiation itself is one primarily establishing the biological fact of paternity. On the other hand, identifying children as legitimate or illegitimate is a classificatory process based primarily on legal rules rather than on biological fact. Thus, an action fixing filiation does not necessarily affect a child's classification as legitimate or illegitimate, or vice versa. For example, a natural father's formal acknowledgment of his child under Art. 203 establishes filiation, but does not affect the child's illegitimate status. On the contrary, a natural father's legitimation of his child under Art. 200 not only establishes filiation, but also changes the child's status from illegitimate to legitimate vis-a-vis the natural father.
To the extent that an action to avow paternity establishes filiation, it is similar to acts by natural fathers to formally acknowledge or to legitimate their children. If a successful action to avow paternity were viewed as equivalent in effect to legitimation by the natural father, the child obviously would never be viewed as illegitimate, regardless of other problems raised. If a successful action to avow paternity were considered equivalent in effect to a formal acknowledgment, the question would be whether formal acknowledgment by the natural father necessarily precludes a child from enjoying legitimate status. Such should not be the case. Certainly, when a child formally acknowledged by the natural father is later adopted by the child's stepfather, the child is considered for all purposes as the legitimate child of his adoptive father under LSA-C.C. Art. 214. Yet, Art. 214 also provides a specific example of an instance where a form of "dual paternity" is recognized, since the biological parent-child link, rather than being totally severed, is still recognized to the extent that the adopted child continues to have the right to inherit from his blood relatives.
In light of this state's strong and deeply-rooted policy of avoiding the bastardization of innocent children, little significance should be attached to whether true filiation is established before or after legitimate status is established. In either case, the innocent child should be considered legitimate. Therefore, in the absence of a compelling argument to the contrary, we hold that allowing the father in the instant case to establish his child's true filiation does not bastardize the child, who remains the legitimate child of her present father.
As noted previously, the second argument against recognizing an action by natural fathers to filiate children who already enjoy legitimate filiation is the contention that such children have no right of action to filiate with the natural fathers. This contention has received support from both the Third Circuit in Fontenot v. Thierry, supra, and the First Circuit in Griffin, et al v. Succession of Branch, supra. In these cases, inferences of legislative intent are drawn from the changes brought about by Act 720 of 1981. The act amended and reenacted both Articles 208 and 209 of the Louisiana Civil Code and Subsection F of Section of 236.1 of Title 46 of the Revised Statutes.
*294 Prior to Act 720, Articles 208 and 209 read as follows:
Art. 208
"Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation."
Art. 209
"1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this Article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this Article.
2. A child who is shown to be the child of a woman on an original certificate of birth is presumed to be the child of that woman, though the contrary may be shown by a preponderance of the evidence.
3. An illegitimate child not shown as the child of a woman on an original certificate of birth may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the illegitimate child of that woman.
4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as a living in a state of concubinage and resided as such at the time when the child was conceived creates a rebuttable presumption of filiation between the child and the alleged father.
5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent. A civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first. If an illegitimate child is born posthumously, a civil proceeding to establish filiation must be instituted within six months of its birth, unless there is a presumption of filiation as set forth in Section 2 above. If no proceeding is timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent shall be forever barred. The time limitations provided in this Article shall run against all persons, including minors and interdicts."
As a result of Act 720, Articles 208 and 209 now read:
Art. 208
"In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209.
Art. 209
"A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation."
Comparison of Article 208 before and after amendment reveals no real change in content. Prior to amendment, the article simply stated that unacknowledged illegitimates could bring an action to prove their filiation. After amendment, the article says essentially the same thing, but specifies those children who are not required to prove filiation. However, a comparison of Article 209 before and after amendment reveals a much greater change in both language *295 and content. One change in language is noted in particular in both Fontenot and Griffin as implying that children who enjoy legitimate filiation cannot filiate to the biological father. The language of former Article 209 which stated that "any child may establish filiation regardless of the circumstances of conception", was deleted from the present version of the article. Thus, it is argued that children who enjoy legitimate filiation or have been legitimated or formally acknowledged, impliedly cannot now bring an action to establish filiation.
The clear inference to be drawn from Articles 208 and 209 is that children who enjoy legitimate filiation, as well as those who have been legitimated or acknowledged by their parents, need not bring an action to prove filiation. The further inference that such children cannot bring an action is both less clear and less tenable. This inference goes against the trend of the jurisprudence which, as recognized by the First Circuit in Griffin, supra, and by the Third Circuit in Thomas v. Smith, 463 So.2d 971 (La.App. 3d Cir.1985), has been "to allow the true parentage of an individual to be established, if such can be accomplished." See Succession of Mitchell, 323 So.2d 451 (La.1975); Warren v. Richard, 296 So.2d 813 (La.1974); IMC Exploration v. Henderson, 419 So.2d 490 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1149, 1150 (La.1982). One case of note is Malek v. Yekani-Fard, 422 So.2d 1151, 1152 (La. 1982), in which the Louisiana Supreme Court allowed a mother to bring action on behalf of her unborn child to filiate with the biological father, despite the fact that the mother had a legal husband. There, the Supreme Court stated that the mother's marital status was "irrelevant except for any weight it may have at trial in proving or disproving filiation."
Nevertheless, the inference is arguably supported by the other change brought about by Act 720 of 1981. This other change was the amending of LSA-R.S. 46:236.1 to allow the Department of Health and Human Resources (DHHR) to take direct civil action to establish filiation against an alleged biological parent despite the fact that the child is presumed to be that of another person.
This statutory change arguably supports the inference of legislative intent set forth above by showing that the drafters of the legislative changes in Article 208 and 209 were apparently considering the presumption of paternity when drafting those changes. However, a review of the legislative history of Act 720 detracts from this view. Act 720, as well as Acts 721 and 722, were all introduced by the same legislators on recommendation of the Louisiana State Law Institute. It is apparent that these acts were intended to abrogate potential problems arising out of the rights of unrecognized heirs. The portion of Act 720 amending LSA-R.S. 46:236.1, dealing with the matter of child support, was not part of the original version of the act as recommended by the Louisiana State Law Institute. This change was later added by floor amendment in the legislature. Moreover, one effect of this floor amendment was simply to codify the jurisprudence which already recognized the state's right to bring an action to establish filiation despite a presumption of paternity. See State in Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.1979), writ denied, 370 So.2d 577 (La.1979). See also State, Etc. v. Guillory, 407 So.2d 1327 (La.App. 3d Cir. 1981).
We further note that under the argument advanced in Fontenot and Griffin, a child formally acknowledged by the initiative of the "parent" would have no right to filiate to another individual whom the child viewed as the real parent. Of course, such a formal acknowledgment can be accomplished simply by passing an act before a notary and two witnesses. One may argue that if a child in such circumstances should be allowed to come into court for the limited purpose of proving that the person who acknowledged him was not in fact his parent, and thus open the way to an action to filiate with the real parent, a child presumed to be that of the mother's husband should likewise have a right of action to *296 rebut the presumption of paternity. Once the presumption is rebutted and the child is no longer filiated to the presumed parent, the child might then bring an action to filiate with the real parent. This is apparently the position of the First Circuit in Griffin, despite the more general statement of the case's holding, since the children in that case were allowed to try to rebut the presumption of paternity, but failed to satisfy the burden of proof.
The reasons set forth above show that the arguments against allowing a child with a presumed parent to filiate with the natural parent face substantial opposing arguments. At the very least, these opposing arguments greatly undercut the advisability of giving much weight in the instant case to inferences of legislative intent, especially since these inferences are only indirectly involved here. Furthermore, recognizing DHHR's action to filiate a child points out the inequity which could arise if a biological father were forced to support a child with whom he has never had an opportunity to develop a relationship. Therefore, as stated previously, the appellant is not clearly precluded under state law from bringing an action to filiate with his child.

MR. FINNERTY'S AVOWAL ACTION
Having recognized the limited due process right of a natural father to an opportunity to establish a relationship with his child, and also having found no clear preclusion of an action by a natural father to avow paternity by rebutting the presumption of Article 184, we now turn to the problem of applying these findings to the present case.
In a similar case, the issue of what standard of proof should apply in rebutting the presumption might be an initial consideration. However, because the biological fact of paternity is not disputed by the parties in the present case, such a consideration is unnecessary here. It may well be that the legislature should establish a standard of proof to govern such actions, and should consider time limitations for the bringing of such actions as well. For obvious reasons, the greater the period of time which elapses from the child's birth to the bringing of the action, the less favorably such an action should be viewed. In this latter regard, we find that Mr. Finnerty's claim should not be viewed as untimely since there were no legal guidelines for him to follow, and since the mother, by initially letting him visit with the child, did not force him to resort to seeking visitation through the testing of unknown legal waters. Mr. Finnerty filed suit promptly after further visitation with his child was refused.
When Mr. Finnerty brought suit against the mother of the child, only she was named as defendant; the presumed father was not made a party. This court may notice the absence of an indispensable party on its own motion, LSA-C.C.P. Art. 645, and may remand the case so that the petition may be amended accordingly, and so that further evidence may be received. LSA-C.C.P. Art. 646. We find that in this case Mr. Boyett was an indispensable party. Indispensable parties are those whose interests in the subject matter of the action are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication cannot be made unless these parties are joined in the action. LSA-C.C.P. Art. 641. Prior to Mr. Finnerty's action, Mr. Boyett was considered the child's father in all respects, including biologically. When an action is brought through which a court can declare that another man is the biological father of a presumed parent's legitimate child, equity requires that the presumed father be made a party to the action. The presumed father's interest and rights are necessarily affected by the judgment. Thus, Mr. Boyett must be joined as a party, and the case will be remanded for amendment of the petition to so join him.
This case is appropriately remanded for another reason. In recognizing a natural father's right to establish a relationship with his child, we do not ignore the child's best interest. The visitation rights of any parent are always subservient *297 to the best interest of the child, and the visitation rights of a person whose child is illegitimate are no different. Maxwell v. LeBlanc, 434 So.2d 375 (La.1983). Similarly, a biological father, whose child enjoys legitimate status via the husband of the child's mother has visitation rights that are subservient to the child's best interest. Thus, the best interest of the child in this case should be evaluated. In other cases our law has recognized a presumption in favor of visitation that can only be overcome by conclusive evidence either showing that the parent has forfeited his right of access by his conduct, or showing that exercise of the right of visitation would injuriously affect the child's welfare. Maxwell, supra. We find this presumption applies in the present case as well. Rather than the parent seeking such visitation having to prove visitation to be in the child's best interest, the parent seeking to deny visitation has the burden of proving visitation by the other parent would not be in the child's best interest.
Although the trial court in this case made an alternative best interest determination in its reasons for judgment, such determination was not made under the principles and burden of proof guidelines established in this opinion. On remand, the trial court should consider the evidence already introduced, as well as any new evidence on this matter, in light of the presumption as discussed in Maxwell, supra.
In accordance with the reasons set forth above, the judgment of the trial court sustaining the defendant's exception of no right of action is reversed, the exception is overruled, and this case is remanded for amendment of the petition to join Mr. Boyett as a party, for receipt of further evidence, and for determination of visitation rights in light of the best interest of the child.
REVERSED AND REMANDED.
FRED W. JONES, Jr., J., dissents with written reasons.
FRED W. JONES, Judge, dissenting.
This case calls upon the court to make a policy decision, after a careful consideration of the interests involved and society's stake in the outcome. The interests are those of the child, the mother, the legal father and the biological father.
It appears that, primarily on the basis of cases dealing with relations between natural fathers and illegitimate children, the majority has given primacy to the interest in this case of the biological father and ignored the other interests.
Exactly what are those interests? First, the child is entitled to be reared in a stable environment, comforted by the assurance that her legal father is her actual father. Furthermore, no one should have the right to advise this youngster, by judicial decree, that she was the product of an illicit union between her mother and a third party. Although the majority emphasizes that this would not legally bastardize the child, at some stage in her development this would doubtless be the practical effect of the majority opinion. It is difficult to conceive of any blow more damaging to the emotional wellbeing of the youngster.
Next is the interest of the mother. Concerned about the legitimacy of her baby, she sought marriage with the natural father but was rebuffed. She then, with commendable honesty, approached Boyett with the story of her plight, secured his consent to marriage, and proceeded with this union to remove the cloud over the status of the child. Consequently, the mother is entitled to have the integrity of her family maintained, undisturbed by visitation of the child on a regular basis by her natural father. Equally important, her relationship with the child should not be impaired by the revelation of her illicit conduct with the biological father.
Not to be treated lightly is the interest of the legal father, Boyett. As with all who assume the responsibility of parenting those who are not their biological children, Boyett deserves society's commendation. Further, we should buttress his authority as legal father of the child rather than *298 undermining it by the recognition of Finnerty as her natural father and the awarding to him of regular visitation rights.
Last, there is the interest of the biological father which, under the circumstances, I consider to be minimal. Presented with the opportunity to assume his role as legal father, he optioned to refuse. He now asks for the benefits of fatherhood without the burdens.
Plagued by the ills that accompany the disintegration of families, society has a vital stake in the maintenance of the integrity of this family unit. Regular visitation by the child's natural father would continually remind the mother and the legal father, and later the child, of the mother's illicit act. The strain that this would place upon the family is obvious. Whether it would survive is questionable.
For these reasons I respectfully dissent. Conversely, I would affirm the trial judge's sustaining of the exception of no right of action and, alternatively, the finding on the merits that the best interest of the child would not be served by recognition of Finnerty's paternity and the awarding of visitation rights.
NOTES
[*] Five judge panel pursuant to La. Const. Art. 5, Sec. 8(B).