296 So.2d 813 (1974)
Ada WARREN
v.
Raymond M. RICHARD.
No. 54258.
Supreme Court of Louisiana.
June 10, 1974.
Robert E. Palmer, Amite, for plaintiff-applicant.
William C. Kaufman, III, Seale, Smith & Phelps, Baton Rouge, for defendant-respondent.
SUMMERS, Justice.
David Lee Blackburns died on August 26, 1971 after being struck by an automobile driven by Raymond M. Richard. As a result, Matelan Gray petitioned the Nineteenth Judicial District Court of East Baton Rouge Parish to be appointed as natural tutrix of her minor child, Iris Yvette Blackburns. She also sought authority to enter into an agreement on behalf of the *814 minor child with Raymond M. Richard to compromise and settle the child's claim for damages for the wrongful death of her natural father David Lee Blackburns.
In these proceedings Matelan Gray alleged that, prior to the accident and death of David Lee Blackburns, she had for some years lived in a state of concubinage with him. She recounted that she resided in his house when her minor child Iris was born on June 29, 1961. It was also alleged that after the birth of the child David Lee Blackburns acknowledged the child as his own and referred to her as such in public and private conversations. In addition, he caused her to be educated as his child.
On the basis of these representations, the court appointed Matelan Gray as natural tutrix of the minor and authorized her to enter into the compromise and settlement on behalf of the child. Accordingly, a compromise and settlement was entered into on the child's behalf with Raymond M. Richard and his liability insurer on October 26, 1971.
Thereafter, on August 28, 1972, Ada Warren and Loucis Charles Blackburns instituted the present suit against Raymond M. Richard in the Nineteenth Judicial District Court. This suit was also for damages for the wrongful death of David Lee Blackburns. The petition alleged that Ada Warren was the mother of the deceased David Lee Blackburns, and that Loucis Charles Blackburns was his brother.
It was also alleged that David Lee Blackburns and Loucis Charles Blackburns were the legitimate children of Ada Warren and Willie Blackburns, that Willie Blackburns predeceased his son David Lee and that he, David Lee, never married. The negligence of Raymond M. Richard in striking David Lee and causing his death was also alleged. Damages were claimed by petitioners Ada Warren and Loucis Charles Blackburns for the pain and suffering of David Lee and for their mental anguish and loss of love and affection because of his death.
To this petition the defendant Richard filed an exception alleging no right or cause of action in Ada Warren and Loucis Charles Blackburns to recover for the alleged wrongful death of David Lee under Article 2315 of the Civil Code, for the deceased was survived by his minor child Iris, who under that article would recover to their exclusion. The exception alleged that a settlement had been approved by the court in favor of the minor Iris, releasing the defendant Richard from claims for the death of David Lee. Alternatively, based upon the same allegations, Richard prayed for a summary judgment since there were no genuine issues of fact in dispute. In the further alternative, it was prayed that the exception or summary judgment be maintained as to Loucis Charles Blackburns, brother of the deceased, for, under article 2315, the mother is entitled to recover to the exclusion of a collateral relative such as Loucis.
At the hearing on the exceptions and motion for summary judgment, a machine copy of Iris' certificate of birth was filed by defendant Richard. The certificate recorded the date and place of her birth and the name of her father, "David Blackburns", as well as the name of her mother, "Matlean Blackburns". It is indicated in brief that this machine copy was introduced into the record in lieu of the original without objection, and the record does not contradict this fact. Defendant Richard also offered and filed into the record in support of his position the entire tutorship proceedings.
Plaintiffs' evidence, on the other hand, consisted of separate and identical affidavits by the plaintiff Loucis Charles Blackburns and his half sister Lubertha Norman setting forth that "Matelan Gray was married to Albert Gray and as far as affiant knows was never divorced from him; she was still married to him when Iris Blackburns was born . . . ."
On the basis of the record thus formed the trial judge "granted" the exception of *815 no right or cause of action and the alternative motion for summary judgment dismissing the plaintiffs' suit with prejudice. Thereafter Loucis Charles Blackburns withdrew his claim, and the mother appealed to the First Circuit where the judgment was affirmed. 283 So.2d 507. Certiorari was granted on the mother's application.
Two questions are presented: 1) Were there sufficient allegations and evidence on which to adjudicate the peremptory exception of no right or cause of action or the motion for summary judgment; and, if the evidence was sufficient, 2) can an illegitimate child recover for the wrongful death of her biological father when, at the same time, she is also the legitimate child of another man under the law.
We answer the first question in the affirmative. The trial judge and the Court of Appeal accepted plaintiff's affidavits in support of her contention that Matelan Gray was married to Albert Gray when Iris Blackburns was born. If these affidavits raise an issue of fact, both courts below have resolved that issue in favor of plaintiff's contention. In so doing the courts have accepted the affidavits as establishing the presumption, relied upon in support of plaintiff's contention, that the child Iris, having been born while her mother was married to Albert Gray, is the legitimate child of Albert Gray. Thus, according to plaintiff's contention, no recovery on behalf of the child can be had for the death of David Lee. Her argument is based upon the proposition that a legitimate child cannot recover both for the death of her legitimate father and for the death of her biological father, and that recovery should only be allowed for the death of the legitimate father. The argument rightly assumes that there is no question that the child may recover for the wrongful death of her legitimate father.
The courts below also accepted the allegations of Matelan Gray to the effect that David Lee was the biological father of the child Iris, a fact which is confirmed by the copy of the birth certificate; a fact which would, moreover, be difficult to refute in light of the mother's sworn allegations. We hardly think there is a better witness to this fact. And we are not prepared to presume that she would make this claim at the time of registering her child's birth and again at this timeten years laterby sworn allegations in the tutorship proceedings, acknowledging the child's birth out of wedlock and casting the opprobious stigma of illegitimacy upon her offspring merely for the purpose of permitting the child to recover for David Lee's death.
These facts also support plaintiff's position that because Iris is the biological child of David, and the legitimate child of Albert Gray, she can only recover for the death of one fatherthe legitimate father. If it were otherwise, that is, if the child had no legitimate father, her right to recover in preference to David Lee's mother would be free of question under the decisions of the United States Supreme Court to which reference will be made hereafter. It is the dual paternal parentage of this childone father created by nature, another created by lawwhich poses the problem we must resolve. In our view the pleadings and proceedings before us are sufficient to permit a resolution of the question. Remand would only result in unnecessary delay and expense to plaintiff. La.Code Civ.P. arts. 966-969.
The second question is also answered in the affirmative by decisions of the United States Supreme Court which are controlling here.
Article 2315 of the Civil Code grants the right to recover damages for wrongful death to the widow and children; and if neither survive to the father and mother of the deceased; and in the absence of these, to the surviving brothers and sisters; and if none of the foregoing survive, no action lies. This law means that recovery by a child of the decedent bars recovery by the decedent's mother.
*816 Until the 1968 decision of the United States Supreme Court in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, it was always understood that children, as used in Article 2315, meant legitimate children. La.Civil Code arts. 203 & 2315; Thompson v. Vestal Lumber & Manufacturing Co., 208 La. 83, 22 So.2d 842 (1945); Green v. New Orleans, S. & G.I.R. Co., 141 La. 120, 74 So. 717 (1917); Landry v. American Creosote Works, 119 La. 231, 43 So. 1016 (1907); Lynch v. Knoop, 118 La. 611, 43 So. 252 (1907).
Explicit terms of our Civil Code classify children as "either legitimate, illegitimate, or legitimated." La. Civil Code art. 178. Legitimate children are those born during marriage. Id. 179. Illegitimate children are those born out of marriage. Id. 180. There are two sorts of illegitimate children: those who are born of two persons, who, at the moment when such children were conceived might have legally contracted marriage with each other; and those who are born from persons to whose marriage there existed at the time some legal impediment. Id. 181. Adulterous bastards are those produced by an unlawful connection between two persons, who, at the time when the child was conceived, were, either of them or both, connected by marriage with some other person. Id. 182. (Plaintiff claims the child Iris belongs in this latter classification.) And the law considers the husband of the mother as the father of all children conceived during marriage. Id. 184. (Plaintiff also claims that because of this law the child Iris is legitimate.)
In applying the Equal Protection Clause of the United States Constitution, the United States Supreme Court decided in a case where an illegitimate child was suing for damage for the wrongful death of her mother, "that it is invidious to discriminate against them (illegitimate children) when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother." In this holding, striking down Louisiana's statutory scheme which had theretofore barred recovery by illegitimate children for the wrongful death of their parents, the Court has, as a constitutional proposition, apparently substituted a biological classification for the legal classification Louisiana had long observed. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).
Again in Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), handed down on the same day as the Levy Case, the United States Supreme Court decided that it would be a denial of equal protection to deny a mother the right to recover for the wrongful death of her child simply because the child was born out of wedlock. The opinion declared: "To say that the test of equal protection should be the `legal' rather than the biological relationship is to avoid the issue."
Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), followed four years after. There the United States Supreme Court approved a claim for workmen's compensation benefits of a dependent, unacknowledged, illegitimate child which had been denied by the Louisiana courts. Stokes v. Aetna Casualty and Surety Co., 232 So.2d 328 (La.App.1969), aff'd 257 La. 424, 242 So. 2d 567. In an opinion authored by Mr. Justice Powell it was held that, by relegating the unacknowledged illegitimate to a lower priority in the recovery scheme, the Louisiana Workmen's Compensation Act thereby denied him equal protection of the law. The Court stated the basis for its decision thusly:
"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility *817 or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual as well as unjustway of deterring the parent.
Finally in its latest decision on the subject in Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the United States Supreme Court said:
"We have held that under the Equal Protection Clause of the Fourteenth Amendment a State may not create a right of action in favor of children for the wrongful death of a parent and exclude illegitimate children from the benefit of such a right. Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Similarly, we have held that illegitimate children may be not excluded from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L. Ed.2d 768 (1972). Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally."
To say that the child Iris had no right to recover for her biological father's wrongful death because the law presumed her to be the legitimate child of another man would run counter to the principles established in the decisions of the United States Supreme Court referred to above and would ignore the existence of the child's biological father.
For the purpose of this decision, it is not necessary that we determine to which class of illegitimate filiation this child belongs. It suffices that we simply determine that the child is in fact the biological child of the decedent David Lee. And, since we see no real dispute on this point, the case is in a posture for decision. Babineaux v. Perni-Bailey Drilling Co. et al., 261 La. 1080, 262 So.2d 328 (1972). The fact that the law considers the child to be the legitimate child of Albert Gray will not alter the result. La. Civil Code art. 184.
Here the child was registered as the child of the decedent, recognized as such by him, educated in his name and sworn to be his child by the mother. The fact that the child is by Louisiana's statutory scheme made the legitimate child of Albert Gray cannot deprive her of a right which illegitimate children generally may have for the wrongful death of their biological fathers. As we understand the rationale of the decisions of the United States Supreme Court, it is the biological relationship and dependency which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of the State.
The argument is made that this result will accord more rights to this child than are ordinarily accorded the legitimate child that she will be able to recover for the death of her biological father as well as for the death of Albert Gray, because the law deems her his legitimate offspring. However, this concept is not unique to our law. It is specifically provided that the adopted child, upon his adoption, is not divested of his right to inherit from his blood parents while at the same time he inherits from the adoptive parent. La. Civil Code art. 214.
We are not umindful of the problems a logical extension of these holdings may create, such as a child in these circumstances recovering from both fathers for support and maintenance, or, conversely, requiring the child to support both fathers in a proper case. La. Civil Code arts. 227, 229. But we are influenced in this decision by the constitutional principles announced by the United States Supreme Court to which we must adhere.
These decisions compel this court to recognize that the child Iris had a valid claim for the death of her natural father David. In doing so we affirm the contention that the compromise and settlement entered into on behalf of the child under *818 court authorization has the effect under article 2315 of the Civil Code of pre-empting the claim of the mother Ada Warren for the wrongful death of her son David Lee Blackburns.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.