479 So.2d 324 (1985)
David GRIFFIN, et al.
v.
SUCCESSION OF Velma King BRANCH Through Johnny SMITH, Executor.
No. 84-C-1398.
Supreme Court of Louisiana.
December 2, 1985.
Rehearing Denied January 9, 1986.
*325 James Coxe, III, Baton Rouge, for plaintiff-applicant.
J.D. DeBlieux, Baton Rouge, for defendant-respondent.
BLANCHE, Justice.
This is an action by four major, presumed legitimate children to prove in a succession proceeding their filiation to a deceased person under Civil Code article 209. We granted writs on application of the plaintiffs to decide whether children who fall into one of the enumerated classes contained in Article 209, as amended by Act 720 of 1981, are precluded from bringing an action to prove filiation to their alleged biological father.[1] Specifically, we are called to decide whether the plaintiffs who are presumed legitimate under Civil Code article 184 to Albert Griffin are precluded from establishing their filiation to David Branch. 458 So.2d 108 (La. 1985).
The Court of Appeal for the First Circuit very aptly and succinctly summarized the relevant facts involved, and we adopt that portion of the opinion herein.
Plaintiffs' mother, Pearllena White Griffin, was married on June 10, 1940, to Albert Griffin. The two were allegedly physically separated on July 15, 1955. On March 6, 1956, Thelma White (Thelma Griffin Battley) was born to Pearllena White Griffin. [No father is named on the birth certificate of Thelma White.] David and Daisy Griffin were born on August 26, 1957, with the birth certificates listing Albert Griffin and Pearllena Griffin as the father and mother. On February 26, 1962, John Felix Griffin was born, with the birth certificate listing Albert Griffin and Pearllena Griffin as the father and mother. On December 27, 1972, the marriage of Albert Griffin and Pearllena Griffin was dissolved by a divorce from a California court.
David Branch and Velma King Branch were married approximately fifty years ago. No children were born of this marriage. On December 7, 1980, David Branch died intestate in East Baton Rouge Parish and was survived by his spouse Velma King Branch. The estate, which was comprised of two pieces of property, furniture, and an automobile, consisted of community property acquired by the Branches.
Subsequently, on January 29, 1982, Velma King Branch died testate. Johnny Smith was named executor in the succession pleading.
On March 1, 1982, David Griffin, Thelma Griffin Battley, John Griffin, and Daisy Griffin filed suit in the succession proceeding to establish filiation to David Branch and to be recognized as his illegitimate heirs.
Griffin v. Succession of Branch, 452 So.2d 344 (La.App. 1st Cir.1984). (footnote omitted.)
The trial court rendered judgment in favor of the defendant. While noting that the intent of the present law (Civil Code article 209, as amended by Act 720 of 1981) might preclude the plaintiffs who have legitimate status from asserting claims as illegitimates, that court found that the plaintiffs had failed to carry the burden of proof of filiation. On appeal, the Court of Appeal affirmed on different grounds, holding that the plaintiffs failed to rebut *326 the presumption under Civil Code article 184 that they are legitimate children which arose by the fact that they were born during the marriage of their mother to Albert Griffin, and that as a result the legitimate children cannot institute a suit to establish filiationoverruling Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983).

DUAL PATERNITY AFTER ACT 720
In order to determine if Act 720 as it amended Article 209 precludes a child who falls into one of the enumerated classes contained in that article from instituting a filiation action, it is necessary to analyze the history of the articles dealing with illegitimates.
The previous Article 208 provided:
Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation.
La. Civil Code art. 208, as amended by 1980 La.Acts., No. 549, § 1. Similarly, the previous Article 209 provided in pertinent part:
1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this article.
La.Civil Code art. 209, as amended by 1980 La.Acts, No. 549, § 1.[2] The thrust of these articles is to permit any illegitimate child to prove his filiation to his alleged biological parent.
Consistent with the thrust of the 1980 version of the Articles 208 and 209, the jurisprudence interpreting these articles has allowed the true parentage of an individual to be established even though the individual may enjoy legitimate status to another. Malek v. Yekani-Fard, 422 So.2d 1151 (La.1982); State v. Manning, 390 So.2d 494 (La.1980); Thomas v. Smith, 463 So.2d 971 (La.App. 3d Cir.1985); Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983); Fontenot v. Thierry, 422 So.2d 586 (La.App. 3d Cir. 1982), writ denied, 427 So.2d 868 (La.1983); IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir.), writ denied, 423 So.2d 1149 (La.1982); State through Dept. of Health & Human Resources v. Guillory, 407 So.2d 1327 (La. App. 3d Cir. 1981); Cousin v. Schilleci, 374 So.2d 130 (La.App. 1st Cir.1979); State in the Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.), writ denied, 370 So.2d 577 (La.1979); Willis v. Winford Co., Inc., 366 So.2d 193 (La.App. 2d Cir.1978).
As noted, the above cited articles were again amended in 1981. Article 208 now provides:
In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209.
*327 La.Civil Code art. 208, as amended by 1981 La.Acts, No. 720, § 1. Additionally, Article 209 now provides in pertinent part:
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation....
La.Civil Code art. 209, as amended by 1981 La.Acts, No. 720, § 1.
Led by the recent scholarly work of Professor Spaht of the Louisiana State University Law Center, many courts question the viability of an Article 209 filiation proceeding when the child falls into one of the enumerated classes of that article, regardless of the person to whom the child is seeking to establish filiation. See State through Dept. of Health v. Williams, 471 So.2d 1064 (La.App. 3d Cir.1985), (Domengeaux, J. concurring); Thomas v. Smith, supra; Durr v. Blue, 454 So.2d 315 (La. App. 3d Cir.1984), (Domengeaux, J. dissenting); State v. Jefferson, 448 So.2d 907 (La. App. 3d Cir.1984), (Domengeaux, J. concurring); Succession of Payne v. Payne, 426 So.2d 1355 (La.App. 3d Cir.1983) (Domengeaux, J. concurring with reasons); IMC Exploration Co., supra.[3] For the following reasons we cannot subscribe to this wholesale preclusion of children, who may enjoy legitimate status to one other than the person whom the child seeks to prove his filiation, from establishing their true parentage.
As can be seen from a literal reading of Article 209, as amended by Act 720[4], the present article attempts to define those children who must bring the filiation action by listing those classes of children which are not required to bring an Article 209 filiation proceeding. Now under Act 720, those children who do not fall into one of the enumerated classes (i.e. presumed legitimately filiated under Article 184, legitimated under Article 198, or formally acknowledged under Article 203) must institute an Article 209 filiation proceeding. As to those classes of children enumerated in the article, there is no provision for an Article 209 filiation action. We conclude that children who fall into one of the enumerated classes contained in Article 209 are not precluded from instituting a filiation action under that article, they are merely relieved of the obligation to do so by operation of law.[5] Our question becomes whether the plaintiffs fall into the first enumerated class of Article 209.
In Succession of Levy, supra, the court in allowing a presumed legitimate child to institute a filiation proceeding against his alleged biological father, interpreted the language of Article 209 ("a child not entitled to legitimate filiation") to mean a child who is not entitled to legitimate filiation to the parent to whom he is attempting to prove filiation. We agree with our brethren in this interpretation of Article 209. It is the legal relationship between the child and the parent whom the child is seeking to prove his filiation which determines if the child is relieved of the obligations under Article 209, because it is this relationship which determines if the *328 child falls into one of the enumerated classes. While the plaintiffs are presumed legitimate as to Albert Griffin, they are nonetheless "technically illegitimate" as to David Branch. David Branch is not presumed to be the father of the plaintiffs under Article 184; neither has he legitimated them under Article 198; nor has he formally acknowledged them under Article 203. Had the decedent done any of the latter two acts, or the law provided that the plaintiffs were accorded legitimate status as to David Branch, there would be no need for the filiation action. Since none of these conditions are present, the plaintiffs do not fall into one of the enumerated classes of children contained in Article 209, and are commanded by that article to institute the proceeding.
In closing we note that the public policy of this state as embodied in several section of our Civil Code is to protect the family unit and the marital relationship. While it might be said that the adoption of a rule which precludes a presumed legitimate child from establishing a dual paternity, and subsequently seeking a share of a second succession pie via a filiation action, is in furtherance of this policy, it is equally as sound to conclude that the threat of possible future filiation proceedings may also strengthen the marital relationship. Such policy considerations are best left to the legislature.
Have the plaintiffs met their burden of proof as to their filiation to David Branch
Having concluded that plaintiffs' filiation action was timely, and that Act 720, the law applicable to the plaintiffs filiation action, mandates that the plaintiffs establish their filiation to David Branch, we turn now to the question of whether the plaintiffs have met their burden of proof. Article 209, as amended by Act 720, provides that in a filiation proceeding to an alleged deceased person, the plaintiffs must prove filiation by a preponderance of the evidence.[6] We conclude that the trial court was incorrect in finding that the plaintiffs have not met their burden of proof as to their filiation to David Branch.
Plaintiffs testified at the trial that they were informally acknowledged during the lifetime of David Branch in numerous ways, including gifts of food, money and clothes. In addition, the decedent affirmed to others that the plaintiffs were his children. The plaintiffs testified that on several occasions they had spent the night at the decedent's home, and that they had continued to visit the decedent's home to attend family gatherings on holidays and other occasions until Mr. Branch's death. Lastly, when the children were about nine or ten, decedent's legal wife called them over to her house on a party occasion to "accept them" into her life.
The plaintiffs' mother testified that after her legal husband moved to California, she continued living in a rented house adjacent to that of the decedent. The house was owned by the decedent, and Mrs. Griffin testified that as a result of sexual relationship with the decedent, she paid no rent. After the birth of the first three children, she moved a few blocks away but continued the sexual relationship at least until their fourth child was born.
At Mr. Branch's funeral, an obituary handout was prepared by a funeral home employee, who testified that Mrs. Branch had approved the information contained therein. The handout was passed out to the congregation and read aloud. In addition, an obituary was published in the newspaper. Both stated that the decedent, David Branch, was survived by four children, the plaintiffs. The trial court erred when it failed to consider as evidence the events which took place after the death of Mr. Branch. Article 209, as amended by Act 549 contained an evidentiary restriction as to events post-mortum. La.C.C. art. 209(5), as amended by 1980 La.Acts, No. 549, § 1. Act 720, which is controlling in this litigation, removed this restriction.
*329 In addition, David Griffin testified that the plaintiffs sat next to Mrs. Branch at the funeral in the seats normally reserved for family. Two of the plaintiffs rode with Mrs. Branch in the "family limousine" to the burial; the other of the plaintiffs rode in the second limousine. All of these facts occurred without objection either by Mrs. Branch or the other members of the family.
The trial court erred when it failed to consider as evidence the hospital records of the decedent's last illness. The records contain consent forms as well as references to David Griffin (in the nurses' notes) which substantiate that the decedent had considered this individual to be his son. Certified copies of hospital records shall be received into evidence as prima facie proof of their contents. La.R.S. 13:3714 (Supp. 1985); State v. Wientjes, 341 So.2d 390 (La.1976). Such records are clearly relevant to a determination of filiation under Article 209. See Kenney v. Cooper, 444 So.2d 211 (La.App. 1st Cir.1983). Additionally, the trial court erred in failing to consider as evidence the AFDC (Aid to Families with Dependent Children, see La.R.S. 46:231 et seq.) records of Pearllina Griffin. These records contain the only direct admissions of the decedent that the plaintiffs are his biological children. These records are the official records of a state agency, and as such are admissible under the public documents exception to the hearsay rule. See State v. Nicholas, 359 So.2d 965 (La. 1978). Alternatively, the records could be admissible under the business records exception. See Ziemba v. City of New Orleans, 411 So.2d 697 (La.App. 4th Cir.1982). The instant records show no indication of unreliability; therefore, they should not be excluded under a rigid application of the hearsay rule.
Considering the evidence in its entirety, it is clear that the plaintiffs have proved by a preponderance of the evidence that they are the biological children of David Branch. All of the defense witnesses testified to the effect that the decedent had not told them that the plaintiffs were in fact his children. Additionally they testified that the handout was not prepared or consented to by Mrs. Branch. Considering their testimony, we are of the opinion that the plaintiffs have still met their burden of proof.

DECREE
For the above reasons, the judgments of the trial court and the Court of Appeal are reversed, and judgment in the filiation proceeding is rendered in favor of plaintiffs. This case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DIXON, C.J., concurs.
LEMMON, J., dissents on the basis of peremption, but would otherwise concur in the majority's result.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents, agreeing with Justice DENNIS' dissenting reasons concerning the filiation cause of action burden of proof, and lack of safeguards.
NOTES
[1] Defendants do not challenge and we do not address any question regarding the possible unconstitutional application of Act 720 of 1981, amending Civil Code article 209, to the facts of this case. We do, however, note that Article 209 was amended due to the possibly unconstitutional period contained in Act 549. See Succession of Clivens, 426 So.2d 585 (La. 1982); Succession of Hawkins, 429 So.2d 194 (La.App. 1st Cir.), writ denied, 434 So.2d 1098 (La.1983). Act 720 provides that "[a]ny person against whom the time period provided in this Act would otherwise have accrued ... shall have one year from its effective date to bring a proceeding to establish filiation...." The effective date of Act 720 was September 11, 1981; therefore, because the instant suit was filed prior to September 11, 1982, it was not barred. The possible unconstitutional application of Act 720 has been rejected by this Court. Succession of Grice, 462 So.2d 131 (La. 1985); Succession of Clivens, supra. Additionally, no compelling state interest requires that this proceeding be governed by Act 549 of 1980 rather than by Act 720. See Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).
[2] Prior to this Court's decisions in Succession of Mitchell, 323 So.2d 451 (La. 1975) and Warren v. Richard, 296 So.2d 813 (La. 1974), Article 209 provided:

In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
(1) By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
(2) When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
(3) When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.
La.Civil Code art. 209 (as it existed prior to 1980 La.Acts, No. 549). As a result of this Court's decisions in the above cited cases, Act 549 included in Article 209 the language "regardless of the circumstances of conception." The purpose of the inclusion of this language was to give affect to our decisions holding that any illegitimate is allowed to prove his true parentage.
[3] In Malek, supra, in dicta, we rejected this position, stating that marital status is irrelevant except for any weight it may have at trial in proving or disproving filiation. "[I]t is the biological relationship which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of this State." Malek, supra at 1154 (citing Warren v. Richard, supra). Again our belief that any illegitimate child may establish his filiation is reaffirmed.
[4] Act 720 was recommended to the legislature by the Louisiana State Law Institute because the Institute felt that Act 549 contained many problems. It was felt that Act 549 left some confusion as to which persons needed to bring the filiation action. Louisiana State Law Institute Memorandum, Prepared for Meeting of the Council, December 12-13, 1980 (New Orleans). As noted by Professor Spaht at a Council meeting, "we need to know exactly who needs to bring this proceeding (Article 209 filiation)." As noted in the Institute's memorandum: "The law should have a method of assuring itself that child A is the offspring of parent B." Louisiana State Law Institute Memorandum, supra.
[5] Those children who do fall into one of the enumerated classes are relieved of the obligation of proving their filiation, since by operation of law, they are treated the same as legitimates.
[6] Article 209 was amended in 1982 by Act 527 to increase the plaintiffs burden of proof of filiation to an alleged deceased person to clear and convincing. Its effective date was September 11, 1982; therefore it is not applicable to this litigation.