566 So.2d 408 (1990)
Sam SMITH
v.
Mr. and Mrs. John JONES[*].
No. CA 89 0921.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
Rehearing Denied August 9, 1990.
Writ Denied November 26, 1990.
*409 Joseph Defley, Jr., Port Sulphur, for plaintiff-appellant.
Jef Bratton, Covington, for defendants-appellees.
Douglas Ellis, Covington, for minor-appellee.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is a suit in which the plaintiff, Sam Smith, seeks to utilize the compulsory blood test statute found in La.R.S. 9:396 to determine if he is the natural father of a child born to the wife of another man. In the event that he is determined to be the natural father, Mr. Smith also seeks to be awarded visitation rights and to be ordered to pay reasonable child support. The child, Johnny Jones, is the legitimate son of Mr. and Mrs. John Jones.
Civil Code Article 184 provides that: "[t]he husband of the mother is presumed to be the father of all children born or conceived during the marriage." It is uncontested that Johnny was both conceived and born during the marriage of Mr. and Mrs. Jones. Mr. Jones has made no attempt to disavow paternity of Johnny, but instead both he and his wife assert that he is the biological father of Johnny.[1] The Jonses have refused to allow Mr. Smith to visit Johnny and have also refused to submit to blood tests.
Mr. Smith petitioned the Twenty-Second Judicial District Court to compel the Jonses to submit to blood tests. The trial court denied Mr. Smith's rule to show cause, from which ruling Smith has appealed. The issue before this court is the applicability of Louisiana's blood testing statute in a situation where an unmarried man claims to be the biological father of a married woman's child. Before this court can address the issue of blood tests, it is first necessary to determine if a biological father in Mr. Smith's situation has the right to establish paternity despite the presumption of Article 184.

RIGHT OF BIOLOGICAL FATHER TO ESTABLISH PATERNITY
The Civil Code classifies children as either legitimate or illegitimate. Legitimate children are those who are either born or conceived during marriage or who have been legitimated, while illegitimate children are those born and conceived outside of marriage and who have not been legitimated. La.C.C. arts. 178-180. The child's birth or conception during marriage creates a presumption that the husband of the mother is the child's father, unless the husband disavows such paternity within one hundred and eighty days after he learns or should have learned of the birth of the child. La.C.C. arts. 184, 187, 189. Historically, the presumption of the husband's paternity was so strong as to be "absolute and irrefutable (excepting only the right of disavowal under proper circumstances) and precludes application of any rule, principle or theory which would admit of proof that such a child is the offspring of anyone other than the lawful husband of the mother which bore such child." Burrell v. Burrell, 154 So.2d 103, 107 (La.App. *410 1st Cir.1963). Furthermore, the husband's right to disavow paternity was severely limited. In Tannehill v. Tannehill, 261 La. 933, 261 So.2d 619 (1972), the supreme court acknowledged it had never allowed a disavowal of paternity and held that Mr. Tannehill could not disavow paternity of his wife's child despite the fact that he had been sterile since childhood. The policy of prohibiting the bastardization of innocent children was so ingrained in Louisiana law that the presumption of the husband's paternity was labeled "the strongest presumption in the law." Spaht & Shaw, The Strongest Presumption Challenged: Speculations on Warren v. Richard and Succession of Michell, 37 La.L.Rev. 59 (1976).
In recent years, strict interpretation of the presumption of Article 184 as essentially irrefutable has been called into question. The first encroachment on the presumption of paternity, Warren v. Richard, 296 So.2d 813 (La.1974), introduced the concept of dual paternity to Louisiana and held that a child's legitimate status as to the mother's husband was not affected by nor did it preclude the child's wrongful death action as the illegitimate child of another man, the biological father. One year later in Succession of Mitchell, 323 So.2d 451 (La.1975), the supreme court held that the subsequent marriage of the natural parents of four children served to legitimate them, despite the fact that the children were born during their mother's prior marriage to another man. Subsequent jurisprudence has followed the trend begun by Warren and Mitchell and it is now well established that legitimate children may assert their true paternity despite the legal presumption of Article 184. Malek v. Yekani-Fard, 422 So.2d 1151 (La.1982), Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983); Thomas v. Smith, 463 So.2d 971 (La.App. 3rd Cir.1985); Griffin v. Succession of Branch, 479 So.2d 324 (La.1985); Starks v. Powell, 552 So.2d 609 (La.App. 2d Cir. 1989).
The presumption of the husband's paternity has also been affected by legislation. Act 430 of the 1976 Regular Session amended the Civil Code articles on paternity to make the previously "irrebuttable" presumption of Article 184 rebuttable and to allow the husband of the mother more leeway in bringing a disavowal action. La. C.C. arts. 184-190. However, these amendments did not alter the rule that only the husband or his heir may disavow the husband's paternity. La.C.C. arts. 187, 190.
In 1981, Act 720 amended Civil Code Articles 208 and 209 which provide for the filiation by a child to his or her natural parent. Prior to 1981, these articles provided that "any child may establish filiation, regardless of the circumstances of conception." Act 720 changed the wording of Articles 208 and 209 to provide that "a child who does not enjoy legitimate filiation" and "a child not entitled to legitimate filiation" may filiate. It was argued that these changes, when considered with the contemporaneous amendment of La.R.S. 46:236.1 F, which allowed the Department of Health and Human Resources to pursue an alleged natural parent for support of a child despite the Article 184 presumption in favor of another man, evidenced a legislative intent that a child who is the legitimate child of the mother's husband may not establish filiation to another man. See Spaht, Developments in the Law, 1980-1981Persons, 42 La.L.Rev. 403 (1982); Griffin v. Succession of Branch, 452 So.2d 344 (La. App. 1st Cir.1984), reversed, 479 So.2d 324 (La.1985). The supreme court rejected this interpretation in Griffin v. Succession of Branch, 479 So.2d at 327, and held that children already enjoying legitimate filiation were not precluded from filiating to another man, but were merely relieved of the obligation to do so.
The state itself has also challenged the presumption of Article 184 by bringing paternity and support actions against alleged biological fathers despite the fact that another man is presumed to be the legal father. See State In the Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.), writ denied, 370 So.2d 577 (La.1979). In 1981, the right of the state to proceed against an alleged biological father despite the presumption of Article 184 was codified in La.R.S. 46:236.1 F.
*411 The third class of plaintiffs to challenge the presumption of Article 184 are biological fathers, such as Mr. Smith, who wish to establish paternity to the legitimate offspring of another man. As shown above it is well established that an alleged biological father in Mr. Smith's circumstances has all of the potential responsibilities and obligations associated with fatherhood, but the rights of such a biological father were previously unclear. See Griffin v. Succession of Branch, 479 So.2d at 327; Smith v. Cole, 553 So.2d 847 (La.1989).
This court has addressed the issue of whether an alleged natural father has a right to establish his paternity of a child whose legitimate father has failed to timely disavow paternity. Lamana v. LeBlanc, 449 So.2d 31 (La.App. 1st Cir.), writ denied, 450 So.2d 959 (La.1984), (Lamana I). Mr. Lamana sought a judgment granting him visitation and recognizing him as the biological father of a child born within 300 days of the mother's divorce from another man. The mother filed a peremptory exception raising the objections of no right of action and no cause of action asserting that the child was the legitimate offspring of her ex-husband, who had not timely disavowed paternity. This court affirmed the trial court's judgment sustaining the peremptory exception and found that the presumption that the husband of the mother was the father of her child became conclusive when the husband failed to disavow paternity within the time limit provided in La.C.C. art. 189; therefore, the alleged natural father had no right or cause of action to claim he was the child's biological father. Lamana I, 449 So.2d at 32. Mr. Lamana filed a second action (Lamana II) seeking only visitation rights. Lamana v. LeBlanc, 515 So.2d 622 (La.App. 1st Cir. 1987). This court reversed the trial court and upheld the defendant's peremptory exception of res judicata, reasoning that the claim to visitation rights in Lamana II and the claim to recognition of paternity in the prior action (Lamana I) were based on the same cause, i.e., the alleged biological father-child relationship. Id. The supreme court, which in denying writs in Lamana I had observed that the result was correct, reversed this court's finding in Lamana II and remanded the case to the trial court. 526 So.2d 1107 (La.1988).
Upon remand, the trial court granted Mr. Lamana's motion to compel the mother and child to submit to human leukocyte antigens (HLA) testing pursuant to La.R.S. 9:396 to determine if Lamana was the child's biological father. The mother and child failed to appear for testing. Mr. Lamana then filed a rule to show why he should not be legally recognized, for the purpose of visitation only, as the biological father. Subsequently the trial court rendered a judgment declaring Lamana to be the child's biological father, which judgment the mother appealed as res judicata per Lamana I. This court found that the trial court judgment only found as a fact that Lamana was the biological father of the child and it did not grant the relief sought, the right of visitation. Therefore, because it did not determine the merits of the case, the judgment was interlocutory and not appealable pursuant to La.C.C.P. art. 2083. Lamana v. LeBlanc, 558 So.2d 685 (La.App. 1st Cir.1990).
Application of this court's holding in Lamana I to the present circumstances may necessitate a finding that Mr. Smith has no right to establish his paternity by blood tests or by any other evidence. However, in light of the supreme court's recent holding in Smith v. Cole, 553 So.2d 847 (La. 1989), discussed below, we believe Lamana I is no longer authoritative.
Two other appellate courts, Finnerty v. Boyett, 469 So.2d 287 (La.App. 2d Cir.1985) and Durr v. Blue, 454 So.2d 315 (La.App. 3rd Cir.1984), have held that biological fathers have a right of action to establish their paternity to children born during the mother's marriage to another man despite the statutory presumption of the husband's paternity. The Finnerty and Durr decisions were primarily based on four United States Supreme Court decisions regarding the rights of unwed fathers in matters concerning their illegitimate children: Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 *412 L.Ed.2d 511 (1978); Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); and Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The courts in Finnerty and Durr extended the analytical framework of these cases dealing with the constitutional rights of biological fathers of illegitimate children to situations where the child is considered the legitimate offspring of another man under state law.
Appellees contend that the recent decision of the United States Supreme Court in Michael H. v. Gerald D., ___ U.S. ___, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), forecloses any argument by appellant that the preclusion of an assertion of paternity by an alleged natural father due to a statutory presumption of paternity in favor of the mother's husband violates his constitutional rights. Michael H. v. Gerald D. involved a biological father whose blood tests indicated a 98.07% probability of paternity and who had actually established a parental relationship with the child. At issue was the constitutionality of a California statute which conclusively presumed that the husband of the mother is the father of her child and such presumption may be rebutted only by the husband or, in limited circumstances, the wife.[2] The California courts interpreted the statutory presumption to preclude both the child and the natural father from bringing an action to establish paternity and visitation rights. Both child and natural father contended this violated their constitutional rights. On appeal, the United States Supreme Court held that where a child is born into an existing marital family, the natural father's unique opportunity to develop a relationship with his offspring conflicts with the similar opportunity of the husband and it is not unconstitutional for a state to give categorical preference to the latter.
We find the California statute at issue in Michael H. v. Gerald D. to be distinguishable from its Louisiana counterpart. While the California presumption is rebuttable only as outlined in the statute itself, the conclusiveness of the Louisiana presumption has been curtailed both legislatively and jurisprudentially, as noted hereinabove. It is also interesting to note that Michael H. v. Gerald D. was a plurality decision, by vote of five to four. The four dissenting members found that the natural father had a fundamental interest in establishing his paternity in virtually all circumstances, while four members found that where there was an existing family unit he did not.[3] The ninth member of the court, Justice Stevens, concurred with the plurality in holding that the natural father's constitutional rights had not been violated, but, he based his conclusion solely on the fact that the natural father had been provided an opportunity to seek visitation rights. This opportunity was provided by a California statute which allowed the court discretion in granting any interested person visitation rights if in the best interests of the child.[4]
Louisiana has no statutory scheme for the granting of visitation rights to non-relatives. Civil Code Article 146.1 provides mandatory visitation rights to parents and discretionary rights to other relatives with the best interests of the child being the overriding consideration in all visitation issues. We note that Louisiana jurisprudence suggests that an alleged biological father who has been precluded from asserting his paternity may still seek visitation rights. Taylor v. Taylor, 295 So.2d 494 (La.App. 3rd Cir.), cert. denied, 299 So.2d 799 (La.1974); Lamana v. LeBlanc, 526 So.2d at 1111. Allowance of visitation rights in these situations without an accompanying recognition of paternity produces an anomaly as pointed out by the second circuit in Finnerty v. Boyett:
If a natural father has no right of action by which he can have the biological parent-child link legally recognized, then there is no link, in the eyes of the law, that could serve as a basis for granting visitation. [469 So.2d at 292.]
*413 The decision by this state's highest court, rendered after Michael H. v. Gerald D., has spoken directly on this issue. In Smith v. Cole, 553 So.2d at 851, the supreme court recognized that biological fathers may be allowed to bring avowal actions despite the Article 184 presumption. The court, in holding that a biological father is civily obligated for child support even if the mother's husband is presumed to be the child's father, stated:
Since ... [the husband's] failure to disavow paternity would not preclude ... [the biological father] from bringing an avowal action, it would be unjust to construe the presumption so as to provide defendant with a safe harbor from child support obligations. [553 So.2d at 854.]
The Smith decision clearly states the supreme court's position on this issue and we believe this court's decision in Lamana I has been implicitly overruled.[5]
The jurisprudence clearly establishes that otherwise legitimate children are allowed to assert paternity to their biological fathers for wrongful death actions and inheritance purposes despite Article 184. Griffin v. Succession of Branch, 479 So.2d at 327; Malek v. Yekani-Fard, 422 So.2d at 1154; Succession of Levy, 428 So.2d at 913; Succession of Mitchell, 323 So.2d at 456. Dual paternity is recognized in Louisiana and recognition of actual filiation as such does not bastardize or otherwise affect the legitimate status of such children.[6]Warren v. Richard, 296 So.2d 813 (La. 1974). Biological fathers of children who are presumed to be the legitimate child of the mother's husband are subject to civil actions by either the state or the mother for child support. See La.R.S. 46:236.1 F; Smith v. Cole, 553 So.2d at 854; State In the Interest of Poche v. Poche, 368 So.2d at 176. The presumed father may timely disavow paternity under Civil Code articles 187-189. The only interested party who lacks an express statutory mechanism for asserting the true biological link is the natural father. To interpret Article 184 so as to impose all the potential responsibilities and obligations associated with parenthood without allowing the biological father some limited opportunity to assert at least some of the rights of a parent would elevate the presumption from one in the nature of an evidentiary rule, to one in the nature of a substantive rule of law. Such an interpretation would effectively deny the natural father any opportunity to establish a personal relationship with his biological child. It is this actual relationship which demonstrates a commitment to the responsibilities of parenthood and as such has been the point of focus by courts seeking to determine the rights and protection which should be afforded natural fathers. Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985; Finnerty v. Boyett, 469 So.2d at 292; Durr v. Blue, 454 So.2d at 320. Furthermore, as the United States Supreme Court noted in Stanley v. Illinois, while procedure by presumption is always cheaper and easier than individualized determinations, "the Constitution recognizes higher values than speed and efficiency." 405 U.S. at 656, 92 S.Ct. at 1215.
The natural father's most effective means of protecting his opportunity to initially develop a parental relationship is through marriage to the mother. This option of marriage fails to adequately protect the natural father's opportunity to assume a responsible role in the future of his child where as in the instant case there are legal impediments to such a marriage or where marriage is not the will of both parties. The inequity is evident, if a biological father's rights are denied, in the instance where after conception the mother unilaterally chooses to marry another man prior to the child's birth. Under appellees' interpretation of Article 184, the alleged father in these circumstances could not filiate or acknowledge the unborn child. He could not compel the mother to marry him, nor could he assert the subsequent husband's right of disavowal. Thus, through no fault *414 of his own, the natural father would lose all paternal rights while retaining all of the potential obligations and responsibilities.
While we recognize the right to avowal in the circumstances discussed herein, this right should not be absolute. The line of cases which have expanded the rights of illegimate fathers are quite consistent in holding that it is the actual relationship with the child that is determinative, not the mere biological connection where the biological father has chosen not to timely develop it. Thus a biological father who knows or has reason to know of the existence of his biological child and who fails to assert his rights for a significant period of time, cannot later come forward and assert paternity. While Mr. Smith has no actual relationship with his alleged child, he instituted this suit within three months of the child's birth, after the mother had denied his requests for visitation. As the second circuit recognized in Finnerty, "the biological relationship does entitle the natural father at least some opportunity to develop a personal relationship with his child and thus to assume a responsible role in the future of his child." 469 So.2d at 292.
For the reasons set out above, this court follows the position set out by the Supreme Court in Smith v. Cole and holds that a biological father who meets the prerequisites set forth herein, has a right of avowal of a child even though presumed to be the legitimate child of another man.

COMPULSORY BLOOD TEST STATUTE
Having found that Mr. Smith has a right to establish his paternity of Johnny Jones, we now turn to the issue of whether he may utilize La.R.S. 9:396, which states:
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require. [Emphasis supplied.]
The trial court in its reasons for judgment concludes that La.R.S. 9:396 was enacted solely to provide a method for the mother's husband to disavow paternity. This interpretation ignores the plain wording of the statute. Revised Statute 9:396 is clearly applicable not only in an action en desaveu but also "in any civil action in which paternity is a relevant fact." Where a biological father has an actual relationship with his child or where he has been prevented from forming an actual relationship by the mother and he institutes an avowal action within a reasonable time of the child's birth, he may utilize R.S. 9:396 in an avowal action. In the case sub judice, the trial court erred in not ordering the mother, child and alleged biological father to submit to appropriate testing procedures to determine true paternity, therefore we reverse the trial court's judgment to that extent.
Although Mr. Smith has the right to establish his paternity, he has no right to assert the legitimate father's right of disavowal. La.C.C. arts. 187, 190. Mr. Jones' status as the child's legitimate father is not affected by this action. Furthermore, La. R.S. 9:396 does not provide for the complusory testing of any one other than the mother, the child and the alleged biological father. Mr. Jones does not fall into any of the above categories; therefore, the trial court judgment is affirmed to the extent that it refused to compel Mr. Jones to submit to testing under La.R.S. 9:396.
For the reasons assigned herein, the judgment of the trial court is affirmed in part and reversed in part and the case is *415 remanded for further proceedings consistent with the foregoing. All costs of this appeal are to be borne by appellees herein.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
CARTER and SAVOIE, JJ., specially concur.
CARTER and SAVOIE, Judges., specially concurring.
I agree that the result reached by the majority opinion is required by Smith v. Cole, 553 So.2d 847 (La.1989). However, I agree with the trial court that the state has a strong interest in preserving the stability of an established family unit. See Phillips v. Phillips, 467 So.2d 132 (La.App.3rd Cir. 1985).
As an intermediate appellate court, we have the right to disagree with an opinion of our Supreme Court, but we do not have the right to disobey. I agree that the result reached is in accordance with Smith v. Cole, supra, but I am deeply concerned about the effect that these decisions have on the stability of the established family unit.
NOTES
[*] After the opinion was rendered, a request was made to substitute pseudonyms for the names of all parties. Pursuant to this request the Court of Appeal granted the request and asked that West Publishing Co. make the appropriate substitutions.
[1] The 180 day peremptive period for disavowal of paternity has elapsed. C.C. art. 189.
[2] Cal.Evid.Code Ann. § 621.
[3] Justices Brennan, Marshall, Blackmun and White dissented. Justices O'Connor and Kennedy joined Justice Scalia and Chief Justice Rehnquist in the plurality opinion.
[4] Cal.Civ.Code § 4601.
[5] We note that the author of the Smith v. Cole opinion, Justice Cole, was a member of the first circuit panel which rendered the Lamana I decision.
[6] We also note that a form of dual paternity is recognized by C.C. art. 214 relative to adopted children.