Dear Ms. Haynes:
You call our attention to Acts 740 and 755 of the 1993 Regular Session of the Louisiana Legislature and ask two questions concerning them:
(1) Do they have prospective or retroactive application?
 (2) Is a judicial declaration of filiation or paternity from a state other than Louisiana sufficient for purposes of Act 740?
The Acts are lengthy, and you are thoroughly acquainted with their contents. Hence, we will not attempt to set them forth here in detail but will note that they both give legislative guidelines to the administrative agency charged with the upkeep of vital statistics as to what the contents of birth certificates are to be in various situations, including initial filings of completed birth certificate forms and subsequent amendments thereto, especially amendments to be made pursuant to name-change adjudications. R.S. 40:32 et seq., particularly R.S. 40:34(B)(1)(a) and (h), and R.S. 13:4751 et seq., particularly R.S. 13:4751(C). See also R.S. 40:44, 45, 46, 59, and 60. The information appearing on birth certificates is not conclusive proof but, at best, only prima facie evidence of its truth and correctness. R.S. 40:42.
The primary thrust of these Acts is to open the state's administrative records on vital statistics to the realities taking place in the law with respect to the expansion of rights and obligations of biological parents and their children. At one time, the traditional civil law presumption that the husband of the mother is the father of the child, R.C.C. art. 184, was applied in Louisiana with as much rigor as it had ever been applied down through the centuries in any civilian jurisdiction. And illegitimate children had almost no rights. However, the growth of scientific technology which can now pinpoint paternity with unprecedented accuracy and social changes occurring under the application of modern constitutional law, especially the Equal Protection Clause, eventually superseded those traditional approaches, and the situation is quite different today. See, for example, R.S. 9:396 et seq., 399, and 400 et seq. A quick legal history can be gleaned from Warren v. Richard, 296 So.2d 813,815-817 (La. 1974); the comment, "Expansion of Putative Fathers' Rights in Louisiana," 37 Loyola L. Rev. 93 (1991); and the cases cited and discussed in these two authorities.
Specifically in answer to your first question, it is our opinion that these Acts generally are to be applied prospectively. See R.S. 1:2. However, to understand what that means in practical application requires an analysis of what these Acts do and in what areas they are having effect.
Neither of these Acts create or destroy the substantive rights and obligations — the legal relations — existing between and among various parents and children. These Acts only tell the custodian (the state registrar) and others responsible for state administrative records regarding birth certificates what information should be initially recorded in them and, upon the occasion of a formal amendment procedure, what and how they should be altered. Thus, the Acts cannot be retroactive so as to effect, for example, the result that one who filled out and filed an initial birth certificate years ago under the old law did so in violation of these new laws. Such an application would seem to turn these Acts into prohibited ex post facto laws having, per R.S. 40:61, criminal penalties. Nor, in our opinion, do these Acts require the state registrar to undertake a massive "search and correct" operation with respect to already filed and existing records.
On the other hand, events such as the date of birth of a child are essentially irrelevant to the effective date of these Acts, since these Acts govern only the recordation of information in state administrative records on vital statistics. Such administrative laws governing the mere recordation of information do not encompass substantive rights which attach to the individual person and remain with him, undiminishable by future legislation. If that were true, a person born when the administrative laws governing drivers' licenses required a minimum age of 15 could successfully demand a license at age 15 even if the legislature had raised the legal driving age to 16 when the person was only 4 years old. The point here is that the state registrar and others responsible for birth certificates are to begin following the new laws on their effective date, as new certificates are filled out and filed and as formal requests for amendment are decided, regardless of the dates of the children's births or the filiation and paternity judgments relied on.
Insofar as these Acts have any effect on pending judicial actions, they appear to be procedural in nature, and the general civilian rule is that courts will apply the law as written at the time of decision. The courts will necessarily answer this aspect of your question in the very cases themselves currently pending before them. Likewise, only the courts can and will answer your expressed mental reflection about who might have legal standing in judicial actions for name changes and judicial actions for injunctions against name changes, both of which will almost surely arise in the future. Suffice it to say that the state registrar as an agent of the state is under a duty to obey and follow the mandate contained in these Acts beginning with their effective date.
As to your second question, the State of Louisiana is constitutionally required to give full faith and credit to the valid judgments of other states. In our opinion, it would be too great a burden for the state registrar to attempt to determine the validity of other states' judgments, and Louisiana law already provides a better procedure — a judicial procedure — for doing so. See R.S. 13:4241 et seq. and C.C.P. art. 2541
providing specific procedures on how to obtain recognition, execution, and enforcement in Louisiana of "foreign judgments." In our opinion, you may adopt and place in your regulations the policy that an out-of-state judgment must first be made executory by a Louisiana judgment under one of these procedures before the state registrar can "execute" or "enforce" it with respect to the state's administrative records on vital statistics. Certainly, the new Acts do not prohibit such a policy but rather, read in pari materia with R.S. 13:4241 et seq. and C.C.P. art. 2541, would appear to contemplate it.
We trust that this opinion has fully answered your request. If you have any further questions about these or any other laws affecting your duties, please do not hesitate to ask. With kindest regards, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/bb
cc: Mr. Albert I. Donovan Executive Counsel to the Governor
0870f