liKNOLL, J.,
concurring.
I write separately to concur in the result only. In my view, since Louisiana law (our Civil Code and statutory law) fails to provide for an avowal action for an unwed biological father, the real focus of the majority opinion should be directed toward a consideration of the unwed biological father’s constitutional rights, placed in balance with competing interests. Therefore, I disagree with the majority’s application of the common law doctrine of laches, which has no statutory or jurisprudential basis in Louisiana.
If an unwed biological father’s claim is supported by constitutionally based rights, a procedural bar cannot deny consideration of those claims based on state law or absence thereof, because state law is subordinate to the Constitution according to the supremacy clause. U.S. Const. art. VI, cl. 2; Layne v. City of Mandeville, 93-0046 (La.App. 1 Cir. 12/29/93), 633 So.2d 608, writ denied, 94-0268 (La.3/25/94), 635 So.2d 234. “It is a seminal principle of our law ‘that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective States, and cannot be controlled by them.’ McCulloch v. Maryland, 4 Wheat. 316, 426, 4 L.Ed. 579, 606 (1819).” Hancock v. Train, 426 U.S. 167, 178, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976). Therefore, we must not prevent consideration of the ultimate issue on state law grounds. Specifically, the majority should have addressed the unwed biological father’s liberty interest in the relationship with his child and whether he may be deprived of his rights without due process of law.
The delicate issue of balancing the rights of the unwed biological father with competing interests is not new to our United States Supreme Court. Parental rights of biological fathers who were not married to the biological mothers were first recognized in Stanley v. Ill., 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The Court noted that “[t]he right to conceive and to raise one’s children *878 have been deemed ‘essential,’ ‘basic civil rights of man.’ ” Id. at 651, 92 S.Ct. 1208. (Citations omitted.) Therefore, based on a presumption of “unfitness” the State could not deprive the unwed biological father of his children without due process. The unwed father’s substantive rights were again recognized in Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). There, the Court concluded that the biological father’s “substantive rights were not violated by application of a ‘best interests of the child’ standard.” Id. at 254, 98 S.Ct. 549. Based on those two cases, it appears necessary to hold a hearing that explores both the rights of an unwed father and competing interests. In Quilloin, the best interests of the child trumped the biological father’s interests. Where a marital unit is intact, the State’s interest in preserving the integrity of the marital family may also silence a biological father’s competing interests. Id.; Stanley, 405 U.S. at 645, 92 S.Ct. 1208.
The unwed biological father’s substantive rights were further defined in Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The Court explained that something more than genes was necessary for the biological father to preserve his rights. Lehr focused on the biological father’s “grasp[ing the] opportunity and accepting] some measure of ^responsibility for the child’s future.” Id. at 262, 103 S.Ct. 2985. Only then did the Federal Constitution require a State to provide a forum for the unwed father to voice his opinion as to what was in his natural child’s best interest. Id. The Lehr Court was most concerned with whether the State had “adequately protected his opportunity to form such a relationship.” Id. at 264, 103 S.Ct. 2985.
In the case sub judice, the biological father did develop a relationship with his natural child, particularly as the natural mother’s marriage was drawing to a close. He should not be faulted for not coming forward during the time in which his child’s mother was married to another man, because Louisiana’s public policy favors protecting the marital unit. Given the presumption of paternity in La.Code Civ.P. art. 184[1] and the strong State interests in preserving the marital family unit that gave rise to the presumption, any efforts made during that marriage would have been properly thwarted.
The fact that a biological father is thwarted from exercising parental rights when the mother is married to another man is not constitutionally offensive, because the balance tips in favor of preserving the marital family over the biological father’s individual rights. See Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).[2] However, once the bonds of matrimony are dissolved a vinculo matrimonii, the State’s interest in preserving the marital family disappears. This does not ignore the fact that some Urights spring from the dissolution of a lawful marriage, but recognizes instead the policy behind the codal provision and the perspective of our times. Today’s realities are that illegitimacy and “broken homes” have neither the rarity nor the stigma as in the past. When parenthood can be objectively determined by scientific evidence, and where illegitimacy is no longer stigmatized, presumptions regarding paternity are “out of place.” Michael H. v. Gerald D., 491 U.S. 110, 137-147, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (Stevens, J., concurring). I find it significant that the Louisiana legislature, in amending La.Civ.Code art. 184-190 *879 by Act 430 of the 1976 Regular Session, deliberately changed the presumption regarding paternity from conclusive to rebuttable. Smith v. Jones, 566 So.2d 408 (La.App. 1 Cir.), writ denied sub nom. Kemph v. Nolan, 569 So.2d 981 (La.1990). Also significant is Louisiana’s recognition of dual paternity. See, e.g., Warren v. Richard, 296 So.2d 813 (La.1974); Smith v. Cole, 553 So.2d 847 (La.1989). In this case, where we have conclusive scientific evidence of true paternity based on DNA testing, it is inappropriate not to address the biological father’s substantive rights.
The majority opinion and worthy dissents skirt the constitutional issue and, in effect, “conflate[] the question whether a liberty interest exists with the question what procedures may be used to terminate or curtail it.” Michael H. v. Gerald D., 491 U.S. 110, 145, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (Brennan, J., dissenting). In my view, the strong public policies protecting our children are best served not by sweeping the unwed biological father’s substantive rights under the procedural rug, but by examining them at a hearing which preserves his due process rights, and balances the biological father’s rights against competing interests. Under the Fourteenth Amendment and under La. Const, art. I, § 2, “[n]o person shall be deprived of life, liberty, or property, except by due process of law.” La. Const, art. I, § 2. Moreover, balancing tests are traditionally |5used to resolve problems created by competing rights and interests. Mary Kay Kisthardt, Of Fatherhood, Families and Fantasy: The Legacy of Michael H. v. Gerald D., 65 Tul. L.Rev. 585, 625 (1991). Finally, support for the proposition that an unwed biological father is entitled to a hearing when the mother of his natural child is a single woman, no longer married, may be found in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989).
Hopefully, our Legislature will address this delicate issue which will- assist the judiciary in resolving cases of this difficult nature. Indeed, this case poses disturbing issues that are entwined with family matters which are perhaps the most difficult to resolve as they are matters close to the heart. Input from our Legislature would be most helpful and appropriate as this issue is not foreclosed. To demonstrate how difficult this issue is to resolve, I note the prevailing view of the United States Supreme Court in Michael H., which was succinctly summarized by Justice Brennan as an introduction to his dissent:
Five Members of the Court refuse to foreclose ‘the possibility that a natural father might ever have a constitutionally protected interest in his relationship with a child whose mother was married to, and cohabiting with, another man at the time of the child’s conception and birth.’ Five Justices agree that the flaw inhering in a conclusive presumption that terminates a constitutionally protected interest without any hearing whatsoever is a procedural one. Four Members of the Court agree that [the biological father] has a liberty interest in his relationship with [his natural child], and one assumes ... that he does.
Michael H. at 491 U.S. 135, 109 S.Ct. 2333 (Brennan, J., dissenting) (citations omitted.)
For the reasons above, I respectfully concur in the results.

. La.Civ.Code art. 184 provides: "The husband of the mother is presumed to be the father of all children bom or conceived during the marriage.”

. The plurality opinion in Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), has been criticized for its apparent use of State’s interest as a way of avoiding recognition of the liberty interest that emerged in Stanley, Lehr, and others. Mary Kay Kisthardt, Of Fatherhood, Families and Fantasy: The Legacy of Michael H. v. Gerald D ., 65 Tul. L.Rev. 585, 625 (1991). Significantly, and contrary to the facts in the case sub judice, the natural mother in Michael H. did not divorce her husband. Her marriage continued during the time that the biological father sought to preserve his liberty interests. Moreover, unlike Louisiana law, the California presumption was irrebutta-ble; it was conclusive. Consideration of those significant differences and the illuminating opinions offered in concurrence and dissent suggest that the case sub judice is exactly the type that justifies further regard for the liberty interest involved.